**Robert SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–95–036–CR.**

Court of Appeals of Texas,
Waco.

April 23, 1997.

Rehearing Overruled Aug. 6, 1997.

Discretionary Review Refused
March 11, 1998.

Dick DeGuerin, Lewis Dickson & Matt Hennessy, DeGuerin & Dickson, Houston, for appellant.

Bill Turner, District Attorney, Ed Spillane, Asst. District Attorney, Bryan, for appellee.

Before DAVIS, C.J., and CUMMINGS, J., and McDONALD, C.J., (Retired).

**OPINION**

DAVIS, Chief Justice.

A jury convicted Appellant Robert Smith of the offense of solicitation of a gift by a public servant. *See* TEX. PENAL CODE ANN. § 36.08(d) (Vernon 1994).[1] The jury sentenced Smith to confinement in jail for a period of 180 days and a fine of $2,750. The jury recommended that imposition of the jail sentence be suspended and that Smith be placed on community supervision.

**I. FACTUAL BACKGROUND**

The indictment alleges that Smith solicited benefits on or about May 3, 1993 from Patrick Maloney ("Patrick"), Bill Maloney ("Bill"), and Liz Osborn ("Osborn"), all employees of Barnes & Noble Bookstores, Inc. ("Barnes & Noble"). During the pertinent time period, Smith was Vice–President for Finance and Administration for Texas A & M University. Barnes & Noble had a contract with Texas A & M to operate the university's bookstore. Barnes & Noble's corporate offices are located in New York.

The relationship between Texas A & M and Barnes & Noble began in 1990 when the Board of Regents of the Texas A & M University System directed President William Mobley ("Mobley") or his designee to negotiate a contract with the company for the operation of the Texas A & M bookstore. Mobley designated Smith to carry out this directive.

In July 1990 the parties executed a ten-year contract in New York which provided that Barnes & Noble would operate the bookstore. Smith traveled to New York each year thereafter to review the contract. Smith approached Patrick, a Barnes & Noble vice-president, in early 1993 about the possibility of extending the contract for an additional five years. The parties met in College Station for preliminary discussions about the possible extension. Smith told Patrick that he wanted to meet in New York to finalize the negotiations and execute the contract extension. According to Patrick, Smith either told him his wife would be making the trip or "it was understood."

Barnes & Noble provided round trip plane tickets, hotel accommodations, meals, ground transportation, and theater tickets for Smith, Chairman of the Board of Regents Ross Margraves ("Margraves"), and their wives. The Smiths and the Margraves traveled to New York on June 10, 1993, and spent three nights there. The wives did not participate

---

1. Section 36.08(d) provides that a "public servant who exercises discretion in connection with contracts, purchases, payments, claims, or other pecuniary transactions of government commits an offense if he solicits, accepts, or agrees to accept any benefit from a person the public serv-ant knows is interested in or likely to become interested in any contract, purchase, payment, claim, or transaction involving the exercise of his discretion." TEX. PENAL CODE ANN. § 36.08(d) (Vernon 1994).

in the negotiations or in the execution of the contract extension.

From 1990 to 1992, Smith made five trips to New York in connection with the contract. Mrs. Smith accompanied him on three of these trips. Barnes & Noble provided air and ground transportation, hotel lodging, meals, and on some occasions, theater tickets for each of the five journeys. Mrs. Smith did not participate in any of the contract dealings.

When Smith discussed with Barnes & Noble the signing of the original contract in 1990, he asked whether his wife could join him for the trip to New York. Prior to trips in 1991 and 1992, Smith advised Barnes & Noble officials that his wife would be joining him. The State offered evidence of the prior journeys to show the course of conduct which developed between the parties and to show Smith's intent and knowledge when he made the arrangements for the 1993 trip. Barnes & Noble executives testified that it is exceedingly rare for university officials to bring their wives on these kind of business trips.

Smith countered that Barnes & Noble provided these accommodations on account of the friendship that developed between himself and the Barnes & Noble executives. Accordingly, he asked the court to instruct the jury on the "independent relationship" defense provided by section 36.10(a)(2) of the Penal Code. TEX. PENAL CODE ANN. § 36.10(a)(2) (Vernon 1994).[2] In the alternative, Smith argued that he and his wife accepted the accommodations as guests of Barnes & Noble. Under this theory, he asked the court to instruct the jury on the "guest" defense provided by section 36.10(b) of the Code. Id. § 36.10(b) (Vernon 1994).[3]

The State argued that these defenses only apply in cases where the public servant "accepts" rather than "solicits" a benefit. The court accepted the State's position and denied Smith's requested defensive instructions.

## II. THE APPELLATE POINTS

Smith raises twenty-one points of error in this appeal. In fifteen points, he alleges the court erred in:

- overruling his motion to quash the indictment;

- overruling his motion for an instructed verdict;

- denying his requested instruction under section 36.10(a)(2);

- denying his requested instruction under section 36.10(b);

- refusing to submit his requested definition of "solicit";

- failing to define "conduct" in the charge;

- failing to submit an "affirmative" instruction on the statute of limitations;

- overruling his objection to submission of implied solicitation as a theory of the case;

- failing to give the jury a limiting instruction at the time evidence of extraneous conduct was admitted;

- giving the jury such an instruction in the charge;

- failing to define the elements of the alleged extraneous offenses in the limiting instruction;

- commenting on the weight of the evidence by reading Rule 610 of the Rules of Criminal Evidence to the jury in response to a leading objection by the State;

- admitting evidence of the solicitation and spousal travel policies of Texas A & M;

- allowing evidence of extraneous conduct; and

- admitting evidence of a proposal by another company which effectively convert-

---

2. Section 36.10(a)(2) provides that section 36.08 does not apply to "a gift or other benefit conferred on account of kinship or a personal, professional, or business relationship independent of the official status of the recipient." Id. § 36.10(a)(2) (Vernon 1994).

3. Section 36.10(b) provides that section 36.08 "does not apply to food, lodging, transportation, or entertainment accepted as a guest and, if the donee is required by law to report those items, reported by the donee in accordance with that law." Id. § 36.10(b) (Vernon 1994).

ed his prosecution into "a quasi anti-trust—unfair trade competition" dispute. In his other six points Smith claims:

- the evidence is legally insufficient to prove he received any "benefit"; that he committed an offense at all; or that he solicited any benefit within the limitations period (three points);
- the evidence is legally insufficient because it establishes that his acceptance of the benefits alleged fell within either of the defenses provided by section 36.10(a)(2) & (b);
- a variance exists between the indictment and the evidence; and
- section 36.08(d) is unconstitutionally vague and overbroad.

We will affirm the judgment.

## III. THE INDICTMENT

In his first point, Smith asserts that the trial court erred in overruling his motion to quash the "amended" indictment.[4] He complains specifically that the indictment fails to state an offense because it allows conviction on a theory of solicitation "by implication." Smith contends in his third point that the evidence was legally insufficient to prove he violated section 36.08(d), assuming *arguendo* the truth of the State's allegations.

The record reflects that Smith filed his motion to quash the "amended" indictment on November 1, 1994. Smith's trial began that same day. The court denied the motion on November 2.

 The failure of an indictment to allege an offense is a defect of substance. *McCoy v. State,* 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd); TEX. CODE CRIM. PROC. ANN. art. 27.08 (Vernon 1989). If the defendant fails to object to a substantive defect in an indictment before the date of trial, he waives the right to complain about the alleged defect "at a later time, on appeal, or in any other postconvic-

tion proceeding." *Alexander v. State,* 820 S.W.2d 821, 822 (Tex.App.—Waco 1991, pet. ref'd); TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.1997).

 Because Smith did not file his motion to quash the indictment until the date of trial, he has waived the right to complain of the alleged defect in the indictment. *Alexander,* 820 S.W.2d at 822; TEX.CODE CRIM. PROC. ANN. art. 1.14(b). Thus, we overrule his first point.

Although Smith couches his third point in the language of sufficiency of the evidence, his argument remains that the State failed to allege an offense. This is borne out by his argument in support of this point. In his brief, Smith argues that "the State seems to have realized that it could not prove a codified crime, so it decided to artfully redraft the statute and prosecute Appellant anyway." In a footnote, Smith directs the court to the argument and authorities set out in his first point concerning the "impropriety of this charge[ ] and the prosecution of Appellant for it."

Smith's third point merely repeats the arguments set forth in his first point. Because Smith did not file his motion to quash the indictment until the date of trial, he has waived the right to complain of any alleged defect in the indictment. *Alexander,* 820 S.W.2d at 822; TEX.CODE CRIM. PROC. ANN. art. 1.14(b). Thus, we overrule his third point.

## IV. EXTRANEOUS ACTS

Smith complains in his twentieth point about the introduction of evidence of prior business trips he and his wife made to New York.[5] He claims the State offered this evidence for the sole purpose of showing character conformity in violation of Rule 404(b) of the Rules of Criminal Evidence. TEX.

---

4. The grand jury originally returned an indictment against Smith on June 23, 1994. The court quashed this indictment on October 19. The grand jury returned a second indictment on October 27 which was designated an "amended indictment." Notwithstanding this designation, the State never amended the second indictment.

The second indictment was filed under the same cause number as the original indictment.

5. Mrs. Smith did not travel with him on two of these trips.

R.Crim. Evid. 404(b).[6] Smith alleges in his fifteenth point that the court erred in failing to give the jury a limiting instruction at the time the evidence of these extraneous transactions was offered. *See id.* 105(a).

## A. THE OTHER ACTS

The State offered evidence of five prior trips Smith made to New York in connection with the Barnes & Noble contract. These trips occurred in May 1990, July 1990, January 1991, September 1991, and July 1992. On the May 1990 trip, Smith sought to familiarize himself with Barnes & Noble. He called Bill, a Barnes & Noble vice-president, and told him he wanted to visit the corporate offices and some of the bookstores the company operated in New York City. Bill made arrangements for Smith and Margraves to travel to New York from Washington, D.C., at the expense of Barnes & Noble.[7] Barnes & Noble provided airfare from Washington to New York, hotel accommodations, and ground transportation for this overnight stay. Texas A & M reimbursed Barnes & Noble for the hotel.

The July 1990 trip involved the finalizing and execution of the original contract between Texas A & M and Barnes & Noble. Bill invited Smith and Margraves to New York to accomplish this. Barnes & Noble flew Smith, Margraves and their wives to New York on the company's plane. In addition to the use of the corporate plane, the company provided hotel accommodations, meals, ground transportation, and airfare from New York to Texas for the Smiths and the Margraves during their three night stay.

During the January 1991 trip, Smith traveled with two other Texas A & M staff members to review the contract with Barnes & Noble. The company provided him hotel accommodations and a meal during his one night stay. In September 1991, Smith, Margraves, and their wives returned to New York to review the contract. Barnes & Noble flew the Smiths and the Margraves to New York on the company plane. In addi-

tion, the company provided theater tickets, meals, and ground transportation for their four-night stay.

In July 1992, the Smiths and the Margraves again traveled to New York to review the contract. Barnes & Noble provided round-trip airfare, hotel accommodations, theater tickets, meals, and ground transportation for their four night stay.

Smith asked Bill if Mrs. Margraves and his wife could join Margraves and himself for the July 1990 trip. Smith advised Patrick that the four of them would be traveling to New York for the September 1991 and July 1992 meetings. Neither Mrs. Smith nor Mrs. Margraves ever participated in the contract negotiations *or in the meetings where the contract was reviewed.* They did attend the "celebratory" dinner during which the original contract was signed in July 1990.

## B. ADMISSIBILITY

Evidence of an extraneous act or transaction is admissible under Rule 404(b) "when it logically serves to make more probable or less probable an elemental fact or an evidentiary fact that inferentially leads to an elemental fact." *Bishop v. State,* 869 S.W.2d 342, 346 (Tex.Crim.App.1993), (citing *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex. Crim.App.1991) (on rehearing)); TEX.R.CRIM. EVID. 404(b).

■ In this case, the State charged Smith with intentionally and knowingly soliciting benefits from Patrick, Bill or Osborn. Patrick testified that Smith either informed him that his wife would be coming on the trip or "it was understood." The State offered evidence of the prior trips to New York and their planning to show the routine practice which developed between Smith and Barnes & Noble. *Waddell v. State,* 873 S.W.2d 130, 138 (Tex.App.—Beaumont 1994, pet. ref'd); TEX.R.CRIM. EVID. 406. The State also offered the evidence to show Smith's intent and knowledge when he made arrangements with Patrick for the 1993 trip. *Suarez v. State,*

---

6. Smith does not complain that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* TEX.R.CRIM. EVID. 403.

7. Smith and Margraves were in Washington, D.C., on other university business.

901 S.W.2d 712, 720 (Tex.App.—Corpus Christi 1995, pet. ref'd); TEX.R.CRIM. EVID. 404(b). We hold that the evidence was admissible under both theories. The evidence of the parties' routine practice was relevant to show whether Smith solicited the benefits alleged. This evidence also tends to show his intent and knowledge in connection with the alleged solicitation. Thus, we overrule Smith's twentieth point.

### C. LIMITING INSTRUCTION

As the State offered evidence of these extraneous acts, Smith objected. After the court overruled his objections, Smith requested a limiting instruction under Rule 105(a). TEX.R.CRIM. EVID. 105(a). The court denied this request.

■ Rule 105(a) requires a limiting instruction on request when the court admits evidence for a limited purpose. *Montgomery*, 810 S.W.2d at 388; TEX.R.CRIM. EVID. 105(a). However, the rule requires no instruction when evidence of extraneous acts is offered "to prove a main fact in the case," such as intent or knowledge. *Porter v. State*, 709 S.W.2d 213, 215 (Tex.Crim.App.1986); *accord Johnson v. State*, 509 S.W.2d 639, 640 n. 3 (Tex.Crim.App.1974); *Puente v. State*, 888 S.W.2d 521, 528 (Tex.App.—San Antonio 1994, no pet.); *Navarro v. State*, 863 S.W.2d 191, 199 (Tex.App.—Austin 1993, pet. ref'd)..

■ We have already found the evidence of the extraneous transactions was admissible to show Smith's intent and knowledge as well as to show the routine procedure established between Smith and Barnes & Noble. Because the evidence was offered to prove a "main fact" and to show the parties' course of conduct,[8] no limiting instruction was required. Thus, we overrule Smith's fifteenth point.

### V. POLICY EVIDENCE

In his nineteenth point, Smith claims the court erred in admitting evidence regarding Texas A & M's ethical policies on solicitation

and spousal travel. He argues that the admission of this evidence confused the issues because it allowed the jury to convict him because he violated policy rather than the law. *See* TEX.R.CRIM. EVID. 403. Because three different ethics policies are involved, we first summarize the pertinent evidence regarding each policy.

### A. THE POLICIES INVOLVED

#### 1. The Texas A & M Policy Manual

On direct examination, Mobley testified that Texas A & M had "a general policy statement" concerning the acceptance by an employee of gifts or benefits from a company with which the university is negotiating a contract. Smith objected that the admission of this policy would cause a confusion of the issues. The court overruled Smith's objection. Mobley then read the applicable rule prohibiting the solicitation of gifts by employees of the university. The policy states, "As described in this section, an employee should not solicit any gift, favor, or service that might reasonably tend to influence him or her in the discharge of official duties or he knows or should know is being offered with the intent to influence." Smith posed a Rule 403 objection[9] to the recitation of this policy, which the court implicitly overruled. *See Rey v. State*, 897 S.W.2d 333, 336 (Tex.Crim. App.1995). When the State offered a written copy of this policy in evidence, Smith reurged his Rule 403 objection, which the court sustained. The prosecutor then asked Mobley whether he would personally accept benefits from a vendor with which he was negotiating a contract. Smith made a Rule 403 objection and a relevance objection to this question. He also asked the court to strike the question from the record. The court sustained Smith's relevance objection to this question.

■ Smith testified in his own defense. On cross-examination, he stated that he does not believe he violated any university policies in his dealings with Barnes & Noble. The

---

8. Although admissible to show the parties' routine practice, the parties' course of conduct tends to establish Smith's intent and knowledge under the facts of this case.

9. Unless otherwise indicated, a "Rule 403 objection" is an objection on the basis of confusion of the issues.

prosecutor had him read the following portion of the ethics policies found in the Texas A & M Policy Manual without objection:[10]

> No state officer or state employee should accept or solicit any gift, favor, or service that might reasonably tend to influence him in the discharge of his official duties or that he knows should—or should know is being offered with the intent to influence his official conduct.

He testified that Barnes & Noble's payment of his and his wife's expenses would neither influence him nor reasonably tend to influence him.

### 2. The NAEB Code of Ethics

Rex Janne ("Janne"), Director of Purchasing Services for Texas A & M, testified for the State after Mobley. Over Smith's relevance[11] objection, Janne testified that he had never asked a vendor to pay for his wife's travel expenses. The State then inquired about the ethical policies which govern Janne's position. Smith posed relevance and Rule 403 objections to this question. Over Smith's objections, the court allowed Janne to testify regarding the National Association of Educational Buyers' Code of Ethics. Janne recited a rule that buyers are to decline personal gifts from vendors.[12] While overruling Smith's objections, the court did instruct the jury "that [this] case is being tried under the law of the state of Texas, and the rules of ethics are not the standard by which the case is being tried. The jury will act accordingly." The court denied Smith's request for an additional instruction to the effect that there are many ethical guidelines within the State and not all apply to Smith. Over Smith's Rule 403 objection, Janne testified that the purchasing services department at Texas A & M has adopted the National Association's code of ethics. He conceded on cross-examination that this code did not govern Smith in his dealings with Barnes & Noble.

### 3. The TAMUS[13] Ethics Policy

Mobley testified without objection on direct examination[14] that according to the university's spousal travel policies, he would expect a university employee to pay his spouse's travel expenses if she joined him on a trip during which he negotiated a contract but she did not participate in the negotiations.

On cross-examination, Smith questioned Mobley about the propriety of spouses traveling with employees on university business. He asked Mobley whether Texas A & M "frequently" pays for spousal travel expenses. Mobley responded, "Depending very much on the type of trip, yes." Mobley agreed that the furtherance of Texas A & M's image on a business trip was one factor to consider. Smith then presented Mobley with a "hypothetical" situation where a Texas A & M executive traveled to the "home office of some company" for the purpose of furthering the relationship between the university and that company. Mobley testified that such a trip approaches the "gray area" of university policy.[15] Mobley elaborated that it would be important to know whether the spouse made "a direct contribution to whatever th[e] mission was of that trip." Smith asked whether "nurturing the relationship" between the parties would be "a legitimate function." Mobley responded that "it could be." Smith later asked, "Under some circumstances, it is true, isn't it, that Texas A & M University might have, if [requested] paid for Pat Smith's expenses in accompanying

---

10. No objection was necessary to preserve error. Smith testified in order to "meet, destroy, or explain" the State's earlier policy evidence. *See McGlothlin v. State*, 896 S.W.2d 183, 189 n. 9 (Tex.Crim.App.1995) (citing *Maynard v. State*, 685 S.W.2d 60, 65 (Tex.Crim.App.1985)). "[S]uch testimony does not act as a waiver of the right to challenge the admissibility of the evidence originally admitted." *Id.*

11. *See* Tex.R.Crim. Evid. 402.

12. The court's ruling indicates that the court believed Smith had opened the door to this inquiry.

13. Texas A & M University System.

14. Prior to his testimony about the solicitation policy.

15. Based on his responses, Mobley's references to "policy" during cross-examination were to the TAMUS ethics policy later put in evidence by the defense.

Robert Smith to New York on the business trips?" Mobley responded, "That would have been a tough question. It gets back to the [policy] issue at hand." Mobley also conceded that Smith could possibly have been reimbursed from "discretionary funds" for his wife's travel expenses. When Smith asked directly whether Texas A & M would have reimbursed Mrs. Smith's travel expenses for the 1993 trip, Mobley answered, "That would have caused some pause .... [w]ith respect to the policy that we just discussed and—"[16] At this point, Smith's counsel began to ask another question. The court sustained the State's request that Mobley be allowed to finish his answer.[17] Mobley concluded that consideration of reimbursement for this trip "would have caused some pause, absolutely" because of the heightened awareness of the State's travel and ethics policies in 1993. Mobley speculated that he would not have approved reimbursement for Mrs. Smith's expenses, but he conceded that "it might have been paid."

## B. THE EVIDENTIARY RULES

"All relevant evidence is admissible, except as otherwise provided...." TEX.R.CRIM. EVID. 402. Evidence is relevant when it has any tendency to make the existence of a fact of consequence more or less probable. *Id.* 401.

■ Rule 403 provides in pertinent part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of ... confusion of the issues...." *Id.* 403. We presume that the probative value of relevant evidence exceeds any danger of confusion of the issues. *See McFarland v. State*, 845 S.W.2d 824, 837 (Tex.Crim.App.1992).

■ Confusion of the issues occurs where introduction of the contested evidence raises "the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues." 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 403.2 (Texas Practice 1993) (quoting CHARLES T. MCCORMICK, MCCORMICK ON EVIDENCE § 185 (John Strong et al. eds., 4th ed. 1992)) [hereinafter GOODE ET AL.].

■ We do not reverse a court's decision to admit evidence absent an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–2 (Tex.Crim.App.1996). We will not disturb the court's decision so long as it lies "within the zone of reasonable disagreement." *Id.* at 102; *Montgomery v. State*, 810 S.W.2d at 391.

■ Even if the court abused its discretion in the admission of evidence, the accused may waive the right to complain of that error. In order to complain on appeal of the admission of improper testimony, the accused must (1) object; (2) request an instruction to disregard; and (3) move for a mistrial. *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App. 1984); TEX.R.APP. P. 52(a).

■ If we determine that the court abused its discretion in admitting evidence, we must decide whether this error harmed the accused. *Etheridge v. State*, 903 S.W.2d 1, 11 (Tex.Crim.App.1994); *Harris v. State*, 790 S.W.2d 568, 584 (Tex.Crim.App.1989); TEX.R.APP. P. 81(b)(2). In deciding whether the error harmed the accused, we "focus upon the error and determine whether it contributed to the conviction or the punish-

16. Smith argues that he cross-examined Mobley about the spousal travel policy in order to "meet, beat, and destroy" the policy evidence offered by the State. *See McGlothlin*, 896 S.W.2d at 189 n. 9. However, because this policy is wholly distinct from the solicitation policy Mobley identified on direct examination and because Smith never objected to Mobley's brief testimony on direct examination about the spousal travel policy, we hold that his cross-examination of Mobley does not fit within that corollary to the doctrine of curative admissibility. *Edwards v. State*, 813 S.W.2d 572, 576 (Tex.App.—Dallas 1991, pet.

ref'd); *Verell v. State*, 749 S.W.2d 197, 200 (Tex. App.—Fort Worth 1988, pet. ref'd).

17. Smith suggests his counsel was "immobilized" by the court's order. Regardless of whether Smith's counsel was immobilized, he failed to object to Mobley's answer; he failed to ask the court to strike or limit Mobley's answer; and he failed to request a mistrial. *See Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App.1984); TEX.R.APP. P. 52(a). He made no response to the State's request that Mobley be allowed to finish his answer or to the court's ruling on the request.

ment." *Harris,* 790 S.W.2d at 585. We consider six factors when we conduct this analysis:

(1) the source of the error;

(2) the nature of the error;

(3) whether or to what extent it was emphasized by the State;

(4) the probable implications of the error;

(5) how much weight a juror would probably place on the error; and

(6) whether declaring the error harmless would encourage the State to repeat it with impunity.

*Harris,* 790 S.W.2d at 587. The primary question is "whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Lockhart v. State,* 847 S.W.2d 568, 573 (Tex. Crim.App.1992) (quoting *Harris,* 790 S.W.2d at 588).

### C. APPLICATION

#### 1. The Texas A & M Policy Manual

Smith contends Texas A & M's solicitation policy is irrelevant and confuses the issues.[18] The State argues that Smith "opened the door" for the introduction of this evidence during his cross-examination of Mobley. However, Mobley had already recited the policy in question to the jury during his direct examination. Thus, Smith did not invite this evidence.

We must determine whether the court abused its discretion in implicitly[19] finding that the probative value of the evidence is not substantially outweighed by "the

probability that [it] ... create[d] a side issue [which] unduly distract[ed] the jury from the main issues." TEX.R.CRIM. EVID. 403; 1 GOODE ET AL. § 403.2.

After Mobley's testimony, neither side made further reference to the Texas A & M solicitation policy until Smith's cross-examination. The fact that Smith was the last witness raises some question about whether the policy became a distracting side issue. However, other considerations lead us to the opposite conclusion.

In closing argument Smith's counsel briefly mentioned the solicitation policy to the jury and argued that Smith had not violated it. The court specifically instructed the jury on at least two occasions[20] that the case was being tried according to the laws of the State and not according to Texas A & M's policies. In the charge, the court submitted instructions and definitions to the jury on the law applicable to the case. The court instructed the jurors that they must find beyond a reasonable doubt that Smith solicited the benefits alleged before they could find him guilty.

Under these circumstances, we do not believe the solicitation policy became a side issue which unduly distracted the jury. 1 GOODE ET AL., § 403.2. Thus, we cannot say that the court's decision to allow Mobley to recite the policy was outside "the zone of reasonable disagreement." *Montgomery,* 810 S.W.2d at 391.

#### 2. The NAEB Code of Ethics

The State argues that Smith "opened the door" for the introduction of the

---

**18.** He argues that his objection that this policy "is significantly different from the state law, and thus, we object under Rule 403 under confusion of issues" sufficed to call the court's attention to lack of relevance. We disagree. Smith clearly objected to the evidence solely on the basis of confusion of issues. The plain language of Rule 403 assumes the evidence in question is relevant. *See* TEX.R.CRIM. EVID. 403. Thus, he has waived any complaint regarding the relevance of this evidence. *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995); TEX.R.APP. P. 52(a).

**19.** When considering a Rule 403 objection, the court need not state on the record the rationale for it's ruling. *Houston v. State,* 832 S.W.2d 180, 184 (Tex.App.—Waco 1992), *pet. dism'd improvi-*

*dently granted,* 846 S.W.2d 848 (Tex.Crim.App. 1993).

**20.** In addition to giving the jury a cautionary instruction during Janne's testimony, the court also cautioned the jury during Smith's interrogation of his first witness, R.C. Slocum. Smith asked Slocum whether Texas A & M encourages the inclusion of employees' spouses at public relations functions. When the State objected, Smith's counsel responded that the university's ethics policy "is very important." The court responded, "Well, this case is being tried by the laws of the state of Texas and not the ethics policy of the university as I have admonished the jury a couple of times."

NAEB code by attempting to prove the propriety of spousal accompaniment on business trips such as the 1993 trip. However, three of the State's first four witnesses testified that college and university officials rarely traveled with their spouses when they came to New York for contract negotiations.

Patrick testified that from the more than 100 contracts for which he was responsible, officials from Texas A & M and the University of Oklahoma were the only two who brought their spouses with them to New York. Alan Kohn, President of Barnes & Noble, testified that out of the 300 contracts Barnes & Noble has, he could recall only three occasions where spouses had accompanied school officials to New York to review their contracts. From the approximately 150 contracts for which Bill was responsible, he recalled five or six instances where Barnes & Noble had entertained the spouses of university officials in New York.

Smith sought to prove in his cross-examination of these witnesses that the accommodations provided to spouses by Barnes & Noble were nothing more than good manners and hospitality shown in exchange for the courtesy extended to Barnes & Noble executives who visited these schools.

■ The State began this inquiry. Smith did not invite the introduction of the NAEB code. Janne's testimony on cross-examination demonstrates that the NAEB code is irrelevant to Smith's prosecution.[21] Thus, the court abused its discretion in admitting this evidence.

■ Having found error in the admission of this evidence, we must determine whether the error harmed Smith. *Etheridge*, 903 S.W.2d at 11; TEX.R.APP. P. 81(b)(2). The State is clearly the source of the error. The nature of the error was to create a potential confusion of the issues regarding which standard the jury should apply in deciding whether Smith improperly solicited benefits.

Did the State place much emphasis on this evidence? After admitting the evidence of the NAEB policy, the State made no further reference to the policies. In closing argument, neither the State nor Smith mentioned the NAEB code

We next consider the probable implications of the error and the probable weight given the evidence by the jury. Since the NAEB policy admittedly did not apply to Smith, it is difficult to decipher any probable implications from its admission. Moreover, the court specifically instructed the jury on at least two occasions that the case was being tried according to the laws of the State and not according to Texas A & M's policies. In the charge, the court submitted instructions and definitions to the jury on the law applicable to the case. The court instructed the jurors that they must find beyond a reasonable doubt that Smith solicited the benefits alleged before they could find him guilty. Under these circumstances, we believe the jury placed little, if any, weight on this evidence and followed the court's instructions. *See Drone v. State*, 906 S.W.2d 608, 616 (Tex.App.—Austin 1995, pet. ref'd) (no harm where only one witness testified to extraneous offense, State only made passing reference to it in argument, and court submitted limiting instruction).

If we declare this error harmless, will that encourage the State to repeat it with impunity? The facts of this case are unusual. The State sought to present this evidence ultimately because it mistakenly believed Smith had opened the door to this line of inquiry. Under the facts and circumstances of this case, we do not believe that declaring this error harmless will encourage the State to repeat it with impunity.

Having considered all these factors, we find that the error in admitting the NAEB code made no contribution to Smith's conviction or punishment. TEX.R.APP. P. 81(b)(2).

21. The State relies on its argument that Smith opened the door to this evidence. It offers no argument or authority to suggest what relevance the NAEB policy has. At trial, the State initially offered evidence of Texas A & M's policy to show Smith's intent and knowledge. The court admitted Janne's testimony about the NAEB policy because it believed Smith had invited the evidence by his cross-examination of Mobley.

### 3. The TAMUS Ethics Policy

On direct examination, Mobley testified about the TAMUS spousal travel policy without objection. Smith questioned Mobley about this policy on cross-examination. He failed to object to Mobley's references to this policy on three separate instances in Mobley's cross-examination. In fact, Smith never objected to evidence of the TAMUS policy.

■ Because he failed to object, Smith has waived the right to complain of any alleged error caused by the admission of the TAMUS policy. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995); Tex. R.App. P. 52(a).

Because Smith failed to preserve error with respect to the Texas A & M solicitation policy and the TAMUS spousal travel policy and because he was not harmed by the admission of the NAEB code provision, we overrule his nineteenth point.

### VI. THE FOLLETT PROPOSAL

■ Smith alleges in his twenty-first point that the court erred in admitting evidence of two documents which compare the initial proposals for the operation of the Texas A & M bookstore submitted by Barnes & Noble and Follett College Bookstores, Inc ("Follett"). Smith also complains of the admission of a memorandum he wrote to an employee advising the employee to cancel his plans to visit bookstores operated by Follett.[22] Smith claims the admission of these "exhibits and other testimony surrounding them ... was prejudicial and inflammatory and confounded and confused the issues before the jury."

The State contends that evidence of the competing proposal was admissible to show Smith's motive for soliciting benefits and to rebut the defense's theory that the Barnes & Noble contract was best for Texas A & M.[23]

The record reflects that Janne reviewed the two companies' proposals and prepared documents summarizing and comparing them. He testified without objection that he notified Smith that the Follett proposal included the purchase of the bookstore inventory, while Barnes & Noble's did not. The State then sought to introduce an exhibit in which Janne had summarized and compared the companies' proposals. The court sustained Smith's relevance objection to this exhibit.

On cross-examination, Janne testified that he did not know whether Texas A & M submitted the two proposals to an outside firm for purposes of analysis and evaluation.[24] He agreed that such a referral was a common practice when dealing with complex proposals. Janne considered the bookstore proposals "very complex." He agreed with Smith's counsel that an appropriate evaluation of competing proposals would include not only percentages to be paid or other payment guarantees, but also issues of current inventory, current employees, the employees' benefits, and the companies' past performance. Janne stated that he did not analyze the proposals on the basis of the companies' past performance.

Janne testified on redirect examination over Smith's running objection about several differences between the proposals including estimated renovation costs, inventory proposals, payment guarantees, computer sales, and commitment to education. According to Janne, Follett's initial proposal offered greater financial incentives in each area except commitment to education. Barnes & Noble expressed its commitment to education in the form of scholarship funds and other unspecified contributions. The court admitted the exhibit which detailed these differences over Smith's relevance objection.

Donald Powell, Director of Business Services for Texas A & M, testified that he

---

**22.** Smith claims in this point that other documents were improperly admitted, but he does not identify them.

**23.** This theory is found in Smith's opening statement as well as his cross-examination of three of the State's first four witnesses concerning the

value of the contract to Barnes & Noble and to the university.

**24.** Jane Schneider, a Texas A & M management analyst, later testified that Texas A & M submitted the proposals to First Southwest Company of Dallas for analysis and evaluation.

analyzed the two proposals and reported the results of his analysis in a memorandum to Smith. The State then offered this memorandum in evidence, to which Smith posed relevance and Rule 403 objections. The court overruled his objections and admitted the exhibit. Powell testified without objection that after he made plans to visit some of Follett's bookstores, Smith advised him in a note that this trip would be unnecessary. The court admitted the note in evidence over Smith's relevance, Rule 403, and hearsay[25] objections.

 Evidence of motive always is admissible because it is "a circumstance tending to prove the commission of an offense." *Bisby v. State*, 907 S.W.2d 949, 958 (Tex. App.—Fort Worth 1995, pet. ref'd) (quoting *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim.App.1982)). For such evidence to be admissible, "it must tend to raise an inference that the accused had a motive to commit [the charged offense]." *Id.* Prior extraneous transactions can be admissible "as circumstantial evidence of the existence of a motive for committing the offense charged." *Page v. State*, 819 S.W.2d 883, 887 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (quoting *Foy v. State*, 593 S.W.2d 707, 709 (Tex.Crim.App. [Panel Op.] 1980)).

Relevant evidence may be excluded where its probative value is substantially outweighed by the danger of confusion of the issues. TEX.R.CRIM. EVID. 403. We presume that the probative value of relevant evidence exceeds any danger of confusion of the issues. *See McFarland*, 845 S.W.2d at 837.

Confusion of the issues occurs where introduction of the contested evidence raises "the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues." 1 GOODE ET AL. § 403.2.

We do not reverse a court's decision to admit evidence absent an abuse of discretion. *Green*, 934 S.W.2d at 101–02. We will not disturb the court's decision so long as it lies "within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391.

 On this point, Smith's brief provides his version of the pertinent facts and cites two cases without any discussion of the application of these authorities. Rule 74(f) of the Rules of Appellate Procedure requires counsel to include in their briefs "such discussion of . . . the authorities relied upon as may be requisite to maintain the point at issue." TEX.R.APP. P. 74(f). The failure to adequately brief the argument and provide authority to support a particular point waives the complaint. *Lawton v. State*, 913 S.W.2d 542, 558 (Tex.Crim.App.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). Nevertheless, we apply a liberal construction to the briefing requirements. TEX.R.APP. P. 74(p). Thus, we will consider Smith's complaint that the probative value of the Follett evidence is substantially outweighed by the danger of confusion of the issues.[26]

Smith objected to Janne's summary of the companies' proposals on the basis of relevance. Because his objection at trial does not comport with his appellate point, he has waived the right to complain about any alleged error arising from the admission of this exhibit. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986).

Regardless of whether Smith has waived his relevance claim with respect to the other two documents,[27] we agree with the State that the Follett evidence has some probative value to show Smith's motive for soliciting benefits and to rebut the defense's premise that the Barnes & Noble proposal was best for the university. The evidence tends to show motive in that it sheds light on Smith's

---

25. *See* TEX.R.CRIM. EVID. 801, 802.

26. Smith did not object to this evidence at trial on the basis of unfair prejudice. His appellate point does not correspond to his trial objections. Thus, he has waived any complaint that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim. App.1986). Similarly, although he objected to

some of the evidence on the basis of relevance, he does not argue or cite authority in his brief to suggest the evidence is irrelevant. Thus, he has waived his relevance claim. *See Lawton*, 913 S.W.2d 542, 558 (Tex.Crim.App.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); TEX.R.APP. P. 74(f).

27. See note 26, *supra*.

initial request that Barnes & Noble pay his wife's expenses in 1990. Smith's 1990 request began a course of dealing between the parties which resulted in his solicitation of benefits in connection with the 1993 trip. Thus the Follett evidence "is admissible as part of the State's case in chief as circumstantial evidence of the existence of a motive for committing the offense charged." *Foy*, 593 S.W.2d at 709.

The evidence also has some tendency to refute the defense's position that the Barnes & Noble proposal was best for Texas A & M. *See Roberson v. State*, 866 S.W.2d 259, 264–65 (Tex.App.—Fort Worth 1993, no pet.).

■ We must decide whether the court abused its discretion in implicitly [28] finding that the probative value of the evidence is not substantially outweighed by "the probability that [it] ... create[d] a side issue [which] unduly distract[ed] the jury from the main issues." TEX.R.CRIM. EVID. 403; 1 GOODE ET AL. § 403.2.

After Powell's testimony, no further reference to the Follett proposal was made until closing argument. In closing argument, both sides mentioned the Follett evidence, but neither side gave it much attention. In fact, Smith's counsel gave it more attention than the State. In the charge, the court submitted instructions and definitions to the jury on the law applicable to the case. The court instructed the jurors that they must find beyond a reasonable doubt that Smith solicited the benefits alleged before they could find him guilty.

Under these circumstances, we do not believe the Follett proposal became a side issue which unduly distracted the jury. 1 GOODE ET AL. § 403.2. Thus, we cannot say that the court's decision to admit Powell's analysis of the proposal and Smith's memo to him advising against visiting the Follett stores was outside "the zone of reasonable disagree-

ment." *Montgomery*, 810 S.W.2d at 391. We overrule Smith's twenty-first point.

## VII. SUFFICIENCY OF THE EVIDENCE

Smith's second, fourth, and sixth points attack the legal sufficiency of the evidence to support his conviction. His seventh point contends that the trial court erred in overruling his motion for an instructed verdict based on these alleged deficiencies in the evidence.[29]

■ In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

### A. BENEFIT

■ In his second point, Smith alleges that the evidence is insufficient to establish that he solicited a "benefit" as that term is defined by section 36.01(3) of the Penal Code. TEX. PENAL CODE ANN. § 36.01(3) (Vernon 1994). Smith and his wife traveled to New York so that he could finalize and execute the contract extension between Texas A & M and Barnes & Noble. The State charged Smith with soliciting the transportation, meals, lodging, and theater tickets for his wife, as well as theater tickets for himself which they used during this trip.[30] The record reflects that Barnes & Noble provided all these items at no cost to the Smiths.

Smith argues that these are not "benefits" within the meaning of section 36.01(3). Thus, he concludes the evidence is insufficient to support his conviction. Before we

---

**28.** See note 19, *supra*.

**29.** Smith does not contest the factual sufficiency of the evidence to support his conviction. *See Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996).

**30.** Smith does not contest the underlying premise of the indictment that he is criminally responsible for soliciting "benefits" provided to his wife rather than himself. We presume that Mrs. Smith is someone "in whose welfare [Smith] has a direct and substantial interest." TEX. PENAL CODE ANN. § 36.01(3) (Vernon 1994).

can address his sufficiency argument, we must construe the statute and determine what the Legislature intended a "benefit" to be.

### 1. Statutory Construction

When interpreting a statute, we employ the ordinary meaning of the language of that statute. *State v. Mancuso*, 919 S.W.2d 86, 87 (Tex.Crim.App.1996). We generally resort to extratextual considerations "[o]nly when the application of a statute's plain language is ambiguous or would lead to absurd consequences which the Legislature could not possibly have intended." *Id.* at 88. We will interpret a statute which is susceptible to more than one construction in the manner which effectuates the Legislature's purposes. *Camacho v. State*, 765 S.W.2d 431, 433 (Tex.Crim.App.1989).

We presume "that the entire statute and all words in the statute are intended to be effective, and the language therein will create a just and reasonable result." *Mancuso*, 919 S.W.2d at 88; TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988). Section 1.05(a) of the Penal Code instructs us not to apply a strict construction to the law in question. TEX. PENAL CODE ANN. § 1.05(a) (Vernon 1994). Rather, we must construe the provisions of the Penal Code "according to the fair import of their terms, to promote justice and effect the objectives of the code." *Id.* Unless the context dictates a different construction, we apply the Code Construction Act in this process. *Id.* § 1.05(b) (Vernon 1994); *see* TEX. GOV'T CODE ANN. §§ 311.001, *et seq.* (Vernon 1988 & Supp.1997).[31]

"When the Legislature amends a statute, we presume the Legislature meant to change the law, and we give effect to the intended change." *Brown v. State*, 915 S.W.2d 533, 536 (Tex.App.—Dallas 1995), *aff'd*, 943 S.W.2d 35 (Tex.Crim.App.1997). We also presume the Legislature employed each word for a particular purpose and simi-larly omitted each word for a particular purpose. *Id.*

In order to fully address this question, we review the statute from its original enactment in 1973 to its present form. *See McCallum v. State*, 686 S.W.2d 132, 133 (Tex. Crim.App.1985). The language of the current version of section 36.08(d) is identical to that employed in its original enactment in 1973. *Compare* TEX. PENAL CODE ANN. § 36.08(d) *with* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 945, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3661. Chapter 36 of the 1974 Penal Code originally contained no definition for the term "benefit." However, the term was defined in the general definitions section of the code as "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." Act of May 24, 1973, 63rd Leg., R. S., ch. 399, § 1, 1973 Tex. Gen. Laws at 887 (former TEX. PENAL CODE ANN. § 1.07(a)(6)) (repealed 1993).

The Legislature amended section 36.08 in 1975 to prohibit the solicitation of any "pecuniary benefit." Act of June 2, 1975, 64th Leg., R.S., ch. 342, § 11, 1975 Tex. Gen. Laws 912, 916, *amended by* Act of May 28, 1983, 68th Leg., R.S., ch. 558, § 5, 1983 Tex. Gen. Laws 3237, 3238–39. The 1975 Legislature also amended section 36.01 to include a definition of a "pecuniary benefit." Act of June 2, 1975, 64th Leg., R.S., ch. 342, § 11, 1975 Tex. Gen. Laws at 915 (amended 1983). The Legislature defined a "pecuniary benefit" as "money, property, commercial interests, or other similar benefit the primary significance of which is economic gain...." *Id.* The 1975 act also provided that section 36.08 does not apply to "a benefit consisting of food, lodging, transportation, or entertainment accepted as a guest and reported as required by law." Act of June 2, 1975, 64th Leg., R.S., ch. 342, § 11, 1975 .Tex. Gen. Laws at 917 (amended 1983).

---

**31.** We acknowledge an apparent conflict between section 1.05(b) and *Mancuso*'s prohibition against resort to extratextual sources. The Court of Criminal Appeals has never addressed this apparent conflict. We find it unnecessary to do so in this case because the interpretation suggested by Smith leads to a result which the Legislature could not have intended. *See State v. Mancuso*, 919 S.W.2d 86, 88 (Tex.Crim.App.1996).

In 1983 the Legislature amended Chapter 36 by deleting any reference to "pecuniary benefit[s]." Act of May 28, 1983, 68th Leg., R.S., ch. 558, §§ 1–6, 1983 Tex. Gen. Laws at 3237–3241, *amended by* Act of May 27, 1991, 72nd Leg., R.S., ch. 304, art. 4, 1991 Tex. Gen. Laws 1290, 1321–23. The Legislature replaced "pecuniary benefit" with "benefit" throughout the chapter and imported the section 1.07 "economic gain or advantage" definition to section 36.01(5). Act of May 28, 1983, 68th Leg., R.S., ch. 558, §§ 1–6, 1983 Tex. Gen. Laws 3237, 3237–3241 (amended 1991). The 1983 act did not alter the remainder of the pertinent portions of Chapter 36.

The Legislature revisited Chapter 36 in 1991 when it enacted a sweeping ethics reform act. Act of May 27, 1991, 72nd Leg., R.S., ch. 304, 1991 Tex. Gen. Laws 1290. The 1991 act amended section 36.01(5) as follows:

> (5) "Benefit" means anything reasonably regarded as *pecuniary* [economic] gain or *pecuniary* [economic] advantage, including benefit to any other person in whose welfare the beneficiary *has a direct and substantial interest* [is interested . . . .].

Act of May 27, 1991, 72nd Leg., R.S., ch. 304, § 4.01, 1991 Tex. Gen. Laws at 1321, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws at 3659. The 1991 act also deleted the former food, lodging, transportation, and entertainment exception of section 36.10 and recodified it in a new subsection as follows:

> (b) Section 36.08 (Gift to Public Servant) of this code does not apply to food, lodging, transportation, or entertainment accepted as a guest and, if the donee is required by law to report those items, reported by the donee in accordance with that law.

Act of May 27, 1991, 72nd Leg., R.S., ch. 304, § 4.05, 1991 Tex. Gen. Laws at 1322 (repealed 1993).[32]

Other than renumbering section 36.01(5) to section 36.01(3) and deleting the phrase "of this code" from section 36.10(b), the Legislature effected no substantive changes to the pertinent provisions of Chapter 36 when it repealed the 1974 Penal Code and enacted the 1994 Penal Code. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws at 3659, 3662 (current versions at Tex. Penal Code Ann. §§ 36.01(3), 36.10(b) (Vernon 1994)).

The current version of section 36.01(3) defines a "benefit" as "anything reasonably regarded as pecuniary gain or pecuniary advantage, including benefit to any other person in whose welfare the beneficiary has a direct and substantial interest." Tex. Penal Code Ann. § 36.01(3). Smith claims that the term "pecuniary gain" means monetary gain or the gain of something which could reasonably be regarded as the equivalent of monetary gain. He suggests this would include money or "the equivalent of money, such as some commodity, tangible thing, or intangible but transferable right."

Were we to accept Smith's interpretation, we would conclude that had Barnes & Noble given Smith money for the express purpose of purchasing airfare, lodging, ground transportation, theater tickets, and meals for his wife, and theater tickets for himself, then he would have received a "benefit." However, because Barnes & Noble only provided the actual items, rather than the money to purchase them, Smith received no "benefit." This is a result which the Legislature could not have intended. *Mancuso*, 919 S.W.2d at 88.

Black's Law Dictionary defines "pecuniary" in part as something "which can be valued in money." Black's Law Dictionary 1131 (6th ed. 1990). Webster's Collegiate Dictionary defines the verb "value": "to estimate or assign the monetary worth of . . . ." Webster's Collegiate Dictionary 1305 (10th ed. 1993). "Price" is a synonym for "worth." Random House, Roget's Thesaurus 678 (2d ed, 1995). Thus, as opposed to Smith's proposed interpretation, a "benefit" could also be anything to which a price can

---

**32.** The Legislature also recodified this "guest" exception in an identical new subsection (c) which applies to prosecutions under section 36.09 of the Penal Code. *See* Act of May 27, 1991, 72nd Leg., R.S., ch. 304, § 4.05, 1991 Tex. Gen. Laws 1290, 1323, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3662; Tex. Penal Code Ann. § 36.09 (Vernon 1994).

be assigned. We find this interpretation to be more in keeping with the Legislature's intentions. *Camacho,* 765 S.W.2d at 433.

▮ Smith argues that the fact that the Legislature's 1991 amendment changed the definition of a benefit from "economic" to "pecuniary" gain further strengthens his position. We disagree. "Economic" means "of, relating to, or based on ... the distribution[ ] and consumption of goods and services." WEBSTER'S COLLEGIATE DICTIONARY at 365. This is a much broader definition than that given "pecuniary." We construe the 1991 amendment to reflect the Legislature's intent that goods or services of minimal value not be considered "benefits" for purposes of Chapter 36. *Accord* Op. Tex. Ethics Comm'n No. 118 (1993) (a cup of coffee is not a "benefit").[33]

We also note that section 36.10(b) clearly provides that food, lodging, transportation, and entertainment are benefits unless they are accepted by the recipient as a guest and reported according to applicable reporting laws. TEX. PENAL CODE ANN. § 36.10(b). Section 36.10(b) is meaningless if such items are not considered "benefits." Op. Tex. Ethics Comm'n No. 60 (1992).

The Texas Ethics Commission has likewise determined that the provision of food, lodging, transportation, or entertainment is a benefit under section 36.01(3).[34] Op. Tex. Ethics Comm'n No. 60 ($60 meal is a benefit); Op. Tex. Ethics Comm'n No. 69 (1992) (provision of college football tickets is a benefit); Op. Tex. Ethics Comm'n No. 80 (1992) (reimbursement for plane ticket is a benefit); Op. Tex. Ethics Comm'n No. 94 (1992) (provision of hotel room is a benefit).

For each of these reasons, we hold that food, lodging, transportation, and entertainment are all "benefits" as that term is used and defined in Chapter 36. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1988).

### 2. Sufficiency of the Evidence

Smith does not dispute that Barnes & Noble provided the food, lodging, transportation, and entertainment alleged in the indictment. Thus, a rational trier of fact could have found this element of the charge beyond a reasonable doubt. *Saxton,* 804 S.W.2d at 914. We overrule Smith's second point.

### B. SOLICITATION

Smith alleges in his sixth point that the evidence is legally insufficient because it is "fundamentally at variance" with the allegation of the indictment that he "solicited" the benefits in question. He claims that at best, the evidence proves "acceptance" of the benefits.

▮ Where an indictment alleges a complete offense, "we review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment *as incorporated into the charge."* *Benson v. State,* 661 S.W.2d 708, 715 (Tex. Crim.App.1982) (emphasis in original); *accord Fisher v. State,* 887 S.W.2d 49, 55 (Tex. Crim.App.1994).

The indictment alleges in pertinent part that "on or about May 3, 1993, [Smith] did then and there intentionally and knowingly solicit in person and by telephone, directly and by implication, at least one of the [benefits alleged]." The charge allowed a conviction if the jury found beyond a reasonable doubt that Smith "on or about May 3, 1993, did then and there in Brazos County, Texas, intentionally or knowingly solicit in person or by telephone, directly or by implication [any of the benefits alleged]."

▮ The resolution of this point again revolves around the construction of the statute. The term "solicit" is not defined in the Penal Code. Thus, we must apply its plain meaning. *Mancuso,* 919 S.W.2d at 87. "[Although] the word implies a serious request, it requires no particular degree of importunity,

---

**33.** We may also consider administrative interpretations when we construe a statute. *See Anzaldua v. State,* 696 S.W.2d 911, 913 (Tex.Crim.App. 1985); *Lundy v. State,* 891 S.W.2d 727, 729 (Tex. App.—Houston [1st Dist.] 1994, no pet.); TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 1988).

**34.** The legislature has delegated to the Ethics Commission the task of interpreting the provisions of Chapter 36. TEX. GOV'T CODE ANN. § 571.091(a)(5) (Vernon 1994).

entreaty, imploration, or supplication." BLACK'S LAW DICTIONARY at 1392. In defining "solicit," Black's also refers the reader to its definition of "solicitation" which reads in part as follows: "[a]ny action which the relation of the parties justifies in construing into a serious request." *Id.* Thus, we determine "solicit" to mean the taking of some action "which the relation of the parties justifies in construing into a serious request." *Id.*

██ When viewed in the light most favorable to the prosecution, the evidence reflects that Smith talked with Patrick in the Spring of 1993. He told Patrick that his wife would be coming with him to New York in July 1993 when he traveled there to finalize and execute the contract extension. Based on Smith's statement and the parties' prior dealings, Patrick had Osborn, an administrative assistant for Barnes & Noble, make the necessary arrangements. Osborn booked round-trip airfare for the Smiths; reserved a room for them at the Waldorf Astoria Hotel for three nights; booked a limousine for their stay; made dinner reservations for them; and obtained theater tickets for them. Barnes & Noble paid for these arrangements.

The indictment states a complete offense on its face. *See Benson,* 661 S.W.2d at 715. From the evidence recited, we hold that a rational juror could have found beyond a reasonable doubt that Smith solicited the benefits alleged in the indictment. *Saxton,* 804 S.W.2d at 914; *Benson,* 661 S.W.2d at 715. We overrule Smith's sixth point.

### C. THE STATUTE OF LIMITATIONS

██ In his fourth point, Smith contends that the evidence is insufficient to prove that he solicited any benefits from Barnes & Noble within the limitations period.

The grand jury returned Smith's indictment on October 27, 1994. Because the indictment alleged Smith committed the offense on or about May 3, 1993, the State had to prove that the offense occurred at some point within the two years preceding the filing of the indictment. *Jimenez v. State,* 804 S.W.2d 334, 337 (Tex.App.—San Antonio 1991, pet. ref'd); TEX.CODE CRIM. PROC. ANN. art. 12.02 (Vernon 1977).

We have already found legally sufficient evidence to support the jury's determination that Smith solicited the alleged benefits by his phone call to Patrick in the Spring of 1993. From this evidence, a rational juror could have found beyond a reasonable doubt that Smith solicited the benefits alleged within the limitations period. *Saxton,* 804 S.W.2d at 914. Thus, we overrule his fourth point.

### VIII. STATUTORY DEFENSES

██ Smith alleges in his fifth point that the evidence is insufficient as a matter of law because it establishes that his acceptance of the benefits alleged fell within the statutory defenses provided by section 36.10(a)(2) & (b) of the Penal Code. *See* TEX. PENAL CODE ANN. § 36.10(a)(2), (b) (Vernon 1994).[35] In his ninth and tenth points, Smith claims that the court erred in refusing to submit instructions on these defensive theories to the jury.

The State responds that because the indictment alleged that Smith solicited benefits rather than accepting them, the defenses are inapplicable. The State further contends in the alternative that the evidence does not support submission of these defensive issues. Because we decide the evidence is insufficient to support either defensive theory, we need not address the State's contention that these theories are inapplicable to a solicitation case.

██ An accused is entitled to an instruction on every defensive issue raised by the evidence. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim.App.1993). The evidence raising such an issue may be "strong, weak, contradicted, unimpeached, or unbelievable." *Id.* We leave to the jury the task of assess-

---

**35.** This statute provides that section 36.08 "does *not apply*" to persons or benefits falling within the exemptions of section 36.10. TEX. PENAL CODE ANN. § 36.10(a), (b). Thus, the exemptions provided by section 36.10 have "the procedural and evidentiary consequences of [ ] defense[s]" to prosecution. *See Borkowicz v. State,* 802 S.W.2d 115, 117 (Tex.App.—Texarkana 1990, no pet.); *Memet v. State,* 642 S.W.2d 518, 525 (Tex.App.— Houston [14th Dist.] 1982, pet. ref'd); TEX. PENAL CODE ANN. § 2.03(e) (Vernon 1994).

ing the weight and credibility of this evidence. *Hayes v. State*, 728 S.W.2d 804, 809 (Tex.Crim.App.1987). Before an accused is entitled to submission of an instruction on a defense, however, he must produce some evidence of each element of the defense. *Henderson v. State*, 906 S.W.2d 589, 594 (Tex.App.—El Paso 1995, pet. ref'd).[36]

### 1. Section 36.10(a)(2)

Section 36.10(a)(2) provides a defense to prosecution where the "benefit [is] conferred on account of . . . a personal, professional, or business relationship independent of the official status of the recipient." TEX. PENAL CODE ANN. § 36.10(a)(2). Thus, to support submission of this defense, the record must contain some evidence of: (1) an independent relationship, and (2) conferral of the benefit because of that independent relationship. *See Henderson*, 906 S.W.2d at 594; TEX. PENAL CODE ANN. § 36.10(a)(2).

█ The evidence reflects that the Smiths and the Margraves made the 1993 trip to New York for the purpose of finalizing and executing the contract extension. Patrick testified that he had Osborn make the necessary arrangements at Smith's request. There is absolutely no evidence that the Smiths made the trip for any other purpose.[37] Nor is there any evidence that Barnes & Noble provided the benefits alleged on any other basis than the need to finalize and sign the contract extension.

Smith contends that because Patrick and Bill considered him their friend this sufficed to require submission of the "independent relationship" defense. However, the record does not reflect any evidence that Barnes & Noble provided the benefits alleged because of the parties' friendship. Because there is no evidence to support the second element of the defense, the court acted properly when it denied Smith's requested instruction. *See*

*Henderson*, 906 S.W.2d at 594; TEX. PENAL CODE ANN. § 36.10(a)(2). Thus, we overrule Smith's ninth point.

### 2. Section 36.10(b)

Section 36.08 does not apply where the accused accepts food, lodging, transportation, or entertainment as a "guest" and reports the provision of these items in accordance with applicable law. TEX. PENAL CODE ANN. § 36.10(b). To support the submission of this defensive theory, the record must reflect some evidence that: (1) the accused accepted the provisions as a guest, and (2) if required, reported them according to applicable law. *See Henderson*, 906 S.W.2d at 594; TEX. PENAL CODE ANN. § 36.10(b).

█ In his brief, Smith only refers to the first element. It is undisputed that Patrick and Bill considered the Smiths to be their guests. However, the record contains no evidence concerning whether Smith was required to report these accommodations, and if so, whether he did.[38] *See Id.* Because there is no evidence to support the second element of the defense, the court acted properly when it denied Smith's requested instruction. *See Henderson*, 906 S.W.2d at 594; TEX. PENAL CODE ANN. § 36.10(b). Thus, we overrule Smith's tenth point.

We have already found the evidence sufficient to prove Smith solicited the benefits alleged. We have also determined that the evidence does not support either the "independent relationship" or the "guest" defense. Thus, we overrule his fifth point.

### IX. OVERBREADTH AND VAGUENESS

Smith alleges in his eighth point that Section 36.08(d) is unconstitutionally vague and overbroad as written and as applied to him. He argues that the statute is overbroad in

---

**36.** In the context of a defense, the accused has the burden of producing evidence to raise the defense. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App.1991). Once he has done so, the State has the burden of persuasion to disprove the defense beyond a reasonable doubt. *Id.*

**37.** In fact, Smith testified that his wife "complement[ed] his efforts" in his dealings with Barnes & Noble.

**38.** Smith's only reference to the reporting requirement is found in a footnote in a memorandum he filed three days before trial "demonstrating the applicability of [the statutory] exceptions listed in [section 36.10]."

that it invades his First Amendment rights of free speech and assembly. U.S. CONST. amend. I. He contends that the statute is vague as written because it does not give adequate notice of the type of benefits which are proscribed. Smith also claims the statute is vague as applied because "[i]t cannot be reasonably said that ... by [informing Barnes & Noble that he was bringing his wife and accepting the company's] customary hospitalities, [he] reasonably should have known that he was venturing into criminal waters just because he was negotiating on behalf of Texas A & M."

### A. OVERBREADTH

A statute is impermissibly overbroad when, "in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989) (quoting *Clark v. State*, 665 S.W.2d 476, 482 (Tex.Crim.App.1984)). However, even if the statute reaches both lawful and unlawful conduct, it will not be considered overbroad unless it *substantially* interferes with protected conduct. *Bynum*, 767 S.W.2d at 772–73 (emphasis added). "[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself." *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir.1990) (quoting *United States v. Varani*, 435 F.2d 758, 762 (6th Cir.1970)).

Section 36.08 prohibits public servants from soliciting benefits from persons with whom they are engaged in government business. Such a solicitation is not protected speech under the First Amendment. *See Rowlee*, 899 F.2d at 1278. Further, the statute does not prohibit assembly. It only prohibits public servants from soliciting benefits which might incidentally facilitate their assembly with others. *See Employment Div. v. Smith*, 494 U.S. 872, 878, 110 S.Ct. 1595, 1599–1600, 108 L.Ed.2d 876 (1990). Thus, the statute does not interfere with the First Amendment rights of speech or assembly. Smith's overbreadth claim fails for this reason.

### B. VAGUENESS

Due process requires that criminal laws give notice of that conduct which is prohibited in order to give fair notice to people before criminalizing their activity. *Bynum*, 767 S.W.2d at 773. In testing a statute for vagueness, we apply a two-step analysis: (1) does the law "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited;" and (2) does the statute "provide explicit standards for those who apply [it]." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)). Where no First Amendment rights are implicated, the court "need only scrutinize the statute to determine whether it is impermissibly vague as applied to the [accused]...." *Bynum*, 767 S.W.2d at 774.

We have already determined that section 36.08(d) does not implicate Smith's First Amendment rights. Thus, we need only determine whether it is impermissibly vague as applied to his conduct. *Id.*

Smith claims the statute is vague because it does not provide any guidance as to the recognition or implementation of the "independent relationship" and "guest" defenses provided by section 36.10(a)(2) & (b). We disagree. Section 36.10(a)(2) exempts from prosecution those benefits conferred because of an independent relationship between the parties. TEX. PENAL CODE ANN. § 36.10(a)(2). This is neither vague nor arbitrary. *Bynum*, 767 S.W.2d at 775. When applied to Smith's conduct as reflected by the record, sections 36.08(d) and 36.10(a)(2) are not vague at all. *See Id.*

Section 36.10(b) exempts from prosecution those benefits accepted as a guest, and which the guest reports according to any applicable law. TEX. PENAL CODE ANN. § 36.10(b). Again, when we apply Smith's conduct to sections 36.08(d) and 36.10(b), we find that these provisions are not vague at all. *See Bynum*, 767 S.W.2d at 775.

For these reasons, we overrule Smith's eighth point.

## X. THE MOTION FOR AN INSTRUCTED VERDICT

Smith's seventh point complains that the court erred in overruling his motion for an instructed verdict at the conclusion of the State's case in chief. His motion claimed the evidence was insufficient to prove Smith solicited any benefits from Patrick, Bill, or Osborn in 1993. His motion also alleged that the evidence established that Smith "accepted" the benefits as a guest and thus was entitled to the defense set forth in section 36.10(b).[39]

We treat a motion for an instructed verdict as a challenge to the legal sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App.1993). We view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Scott v. State*, 905 S.W.2d 783, 784–85 (Tex.App.—Waco 1995, pet. ref'd).

We have already found the evidence sufficient to prove that Smith solicited the alleged benefits from Patrick in the Spring of 1993. We have also determined that the evidence does not support Smith's claimed "guest" exception. Thus, we overrule his seventh point.

## XI. THE JURY CHARGE

In his eleventh, twelfth, and thirteenth points, Smith contends that the court erred in failing to define the terms "solicit" and "conduct" and by failing to submit an "affirmative" limitations instruction in the charge. He claims in his fourteenth point that the charge lessened the State's burden of proof on the element of solicitation. His sixteenth point alleges that the trial court improperly commented on the weight of the evidence by submitting a limiting instruction in the charge concerning the extraneous offenses. In his seventeenth point, he claims that this limiting instruction was deficient because it did not list the elements of the extraneous offenses.

### A. DEFINITIONS

"The trial court should provide the statutory definition for any term that is statutorily defined." *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). In reviewing the charge, we determine whether the failure to submit the requested definition was error, and if so, whether this error requires reversal. *Id.*; TEX.R.APP. P. 81(b)(2).

Words not statutorily defined should be given their ordinary meanings. *Garcia v. State*, 887 S.W.2d 846, 859 (Tex.Crim.App.1994). No specific instructions are needed regarding such terms. *Id.* We presume that jurors apply the ordinary meanings of such terms. *Id.*

### 1. Solicit

The Penal Code does not define the term "solicit." Therefore, the court committed no error by refusing to submit a definition of the term. *Id.* Thus, we overrule Smith's eleventh point.

### 2. Conduct

Section 1.07(a)(10) of the Penal Code defines "conduct" as "an act or omission and its accompanying mental state." TEX. PENAL CODE ANN. § 1.07(a)(10) (Vernon 1994). Because the term is statutorily defined, the court erred by failing to provide the jury with the statutory definition in the charge. *Cf. Nguyen*, 811 S.W.2d at 167 (court assumed error in failure to define term without deciding whether it was error in fact). Having found error, we must determine whether the error caused harm sufficient to require reversal. *Id.*; TEX.R.APP. P. 81(b)(2).

The statutory definition of conduct is "neither complex nor unusual[ ] and . . . is much like the common meaning of the word." *Nguyen*, 811 S.W.2d at 167. In the charge, the term only appears in the definitions of "intentionally" and "knowingly." *See* TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 1994). In the application paragraph, the charged specifically instructed the jury that

---

**39.** Smith did not raise the "independent relation- ship" defense in the motion.

it must find that Smith intentionally or knowingly solicited the benefits alleged before it could find him guilty.

We do not see how the court's failure to define "conduct" could have harmed Smith. The charge adequately conveyed the meaning of the term to the jury under the facts of this case. Thus, we conclude beyond a reasonable doubt that the court's failure to define the term "conduct" in the charge did not affect Smith's conviction or punishment. *Nguyen*, 811 S.W.2d at 167; TEX.R.APP. P. 81(b)(2). We overrule Smith's twelfth point.

### B. THE STATUTE OF LIMITATIONS

In his thirteenth point, Smith claims the court's limitations instruction was inadequate because it "cannot be gainsaid that [he] was likely convicted based upon alleged conduct that occurred back in 1990." We interpret Smith's complaint to be that the charge allowed the jury to convict him of one of the extraneous transactions proven by the State rather than the charged offense.

When an indictment alleges that the offense occurred "on or about" a certain date, the State need only prove that the accused committed the offense at some time prior to the filing of the indictment and within the limitations period. *Jimenez*, 804 S.W.2d at 337. A charge correctly instructs the jury regarding this when it informs them that a conviction may be had if the evidence shows the offense occurred within this time frame. *Id.*

If extraneous offenses have been introduced for a particular purpose and the charge contains an instruction which requires the jury to find beyond a reasonable doubt that the accused committed the extraneous offenses before it can consider them for the purpose they were introduced, the charge does not allow the jury to convict on the basis of the extraneous offenses. *Id.* Such an instruction "cures any misinterpretation of the charge as to the date of the offense." *Box v. State*, 730 S.W.2d 862, 863 (Tex. App.—Texarkana 1987), *vacated on other grounds*, 760 S.W.2d 261 (Tex.Crim.App. 1988).

In the present case, the court's charge defined "on or about" to mean "any date prior to the filing of the indictment at any time within two years previous to the date of the filing of the indictment in this case, October 27, 1994." The charge also instructed the jury concerning the extraneous transactions as follows:

You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you can not [sic] consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining a continuing scheme, intent, knowledge, or plan, if any, of the defendant in connection with the offense alleged against him in the indictment in this case, and for no other purpose.

The charge appropriately instructed the jurors that they could find Smith guilty if they believed the evidence showed beyond a reasonable doubt that he solicited the benefits alleged "at any time within the two years previous to" October 27. *Jimenez*, 804 S.W.2d at 337. The limiting instruction cured any potential misinterpretation by the jury concerning the date of the offense. *Box*, 730 S.W.2d at 863. Thus, the court properly charged the jury on the statute of limitations. We overrule Smith's thirteenth point.

### C. THE BURDEN OF PROOF

Smith alleges in his fourteenth point that the court's charge lessened the State's burden of proof when it submitted "solicitation by implication" as a manner by which the offense could be accomplished. He argues that this theory negated the State's need to prove he engaged in some affirmative act which constituted solicitation.

The State responds that Smith waived this complaint because he did not file a timely motion to quash the indictment. *See Alexander*, 820 S.W.2d at 822; TEX.CODE CRIM. PROC. ANN. art. 1.14(b). Nonetheless, where

the interest of justice requires, we liberally construe the arguments presented. *See* Tex. R.App. P. 74(p). Thus, we address Smith's point to the extent he contends that the charge lessened the State's burden of proof.[40]

The court's charge tracked the language of the indictment. *See Alba v. State*, 905 S.W.2d 581, 589 (Tex.Crim.App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). It provided the definitional instruction on reasonable doubt required by law. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991). The charge instructed the jury that Smith could not be found guilty unless the jurors were convinced beyond a reasonable doubt that he had solicited the benefits alleged either directly or by implication (i.e., by inference). Because the court charged the jury in this manner, the State's burden was not lessened. Thus, we overrule Smith's fourteenth point.

#### D. The Limiting Instruction

In his sixteenth and seventeenth points, Smith claims that the court improperly commented on the weight of the evidence by submitting the limiting instruction over his objection and by failing to instruct the jury on the elements of the extraneous transactions shown by the evidence.

■■■■ A trial court may not comment on the weight of the evidence in the charge. Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.1997). The court comments on the weight of the evidence when its charge comments on the elements of the charged offense "or assumes the truth of a controverted issue. . . ." *Kitt v. State*, 875 S.W.2d 19, 20 (Tex.App.—Texarkana 1994, pet. ref'd) (citing *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim.App.1986); *Grady v. State*, 634 S.W.2d 316, 317 (Tex.Crim.App. [Panel Op.] 1982)). In determining whether the charge comments on the weight of the evidence, we review the "charge as a whole rather than as a series of isolated statements." *Kitt*, 875

S.W.2d at 20; *accord Whaley*, 717 S.W.2d at 32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985).

■■■■ We have set out the limiting instruction above. The instruction admonished the jurors that they could not consider evidence of extraneous transactions, "if there [were] any," unless they determined "beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then [they could] only consider the same in determining a continuing scheme, intent, knowledge, or plan, if any, of the defendant. . . ."

We have already determined that no limiting instruction was required in this case because the extraneous transactions are probative of Smith's intent and knowledge. Although the instruction was unnecessary, it was not a comment on the weight of the evidence. *See Kitt*, 875 S.W.2d at 20–21. The charge applies the law to the facts of the case to the extent possible without commenting on the weight of the evidence. *See Brooks v. State*, 580 S.W.2d 825, 833 (Tex. Crim.App.1979). Thus, we overrule Smith's sixteenth point.

■■■■ When the court submits a limiting instruction regarding an extraneous offense in its charge, the instruction must advise the jurors that they must determine beyond a reasonable doubt that the defendant committed the extraneous offense before they can consider it for the purpose(s) offered. *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim. App.1994); *Norrid v. State*, 925 S.W.2d 342, 349 (Tex.App.—Fort Worth 1996, no pet.).

■■■■ Smith cites no authority for the proposition that in submitting a limiting instruction on an extraneous offense the court must define the elements of the extraneous offense and instruct the jury that they cannot consider evidence of the "other crime" unless the jurors are convinced that the state "prov[ed] each and every element of the [extraneous] offense [ ] beyond a reasonable

---

40. We have already determined that Smith waived the right to complain about any alleged substantive defects in the indictment. We have also determined that solicitation can be shown by proof that the accused took some action "which the relation of the parties justifie[d] in construing into a serious request." Black's Law Dictionary 1392 (6th ed. 1990). Thus, we approve the State's theory that some conduct of the accused can be considered solicitation by implication or inference from the parties' prior dealings.

doubt...." *Geesa*, 820 S.W.2d at 162. We are not persuaded that such an instruction is required.

No person may be convicted of a criminal offense unless the State proves every element of the offense *charged* beyond a reasonable doubt. *Id.* (emphasis added); TEX. PENAL CODE ANN. § 2.01 (Vernon 1994). The State did not prosecute Smith for any of the extraneous transactions shown by the evidence. Therefore, the jury was not required to find the elements of the extraneous transactions. *See Norrid*, 925 S.W.2d at 349. We overrule Smith's seventeenth point.

## XII. THE TRIAL COURT'S "OUTBURST"

In his eighteenth point, Smith complains that the court commented on the weight of the evidence by reading Rule 610 of the Rules of Criminal Evidence to the jury in response to the State's objection that he was leading the witness. *See* TEX.CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979); TEX. R.CRIM. EVID. 610.

The accused must make a contemporaneous objection to any allegedly improper comment made by the trial court in order to preserve a complaint for review. *Moore v. State*, 907 S.W.2d 918, 921 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); TEX.R.APP. P. 52(a).

In the instant case, after the court recited Rule 610 and sustained the State's objection, Smith's counsel resumed his interrogation of the witness without comment. After asking twenty-six additional questions and after the court sustained another leading objection by the State, Smith's counsel asked for a hearing outside the jury's presence and objected in that hearing to the court's earlier recitation.

Because he failed to make a timely objection to the court's recitation of Rule 610, Smith has waived this complaint. *Moore*, 907 S.W.2d at 921; TEX.R.APP. P. 52(a). Thus, we overrule his eighteenth point.

We affirm the judgment.