COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

SHAWN ALAN
McDOUGAL,                            )                    No. 
08-00-00391-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                     161st District Court

                                                                              )

THE STATE OF TEXAS,                                     )                   of Ector County, Texas

                                                                              )

Appellee.                           )                         (TC# B-27,970)

 

O
P I N I O N

 

Shawn
Alan McDougal appeals his conviction for the offense of murder.  After Appellant entered a plea of guilty
before the jury, the trial court conducted a unitary proceeding, rather than a
bifurcated trial.  Tex.Code Crim.Proc.Ann.
art. 26.14 (Vernon 1989); see Frame v. State,
615 S.W.2d 766, 767 (Tex.Crim.App. 1981).  The jury found Appellant guilty, found
against Appellant on the sudden passion special issue, and assessed his
punishment at life imprisonment.  We
affirm.

FACTUAL SUMMARY








Appellant
pled guilty to causing the death of Melanie Cadena by
choking and hitting her with his hands and by stomping her with his
foot.  Appellant and Melanie had been
involved in an on-and-off romantic relationship for several years and had a
seven-month-old daughter.  The
relationship was characterized by numerous arguments and separations, but the
couple always reunited.  Appellant was
incarcerated in the Ector County Jail from September through mid-October,
1999.  During this time, Melanie began
dating another man.

For
a few weeks immediately prior to her death, Melanie and her daughter shared an
apartment with her cousin, Heather Cadena.  Heather often cared for the baby while
Melanie worked.  Appellant and Melanie
had begun seeing each other once again, and he began living in the apartment
with Heather and Melanie a few days prior to the murder.  According to Appellant=s
statement, he became angry when Melanie came home late from work and told him
she had been sitting in the parking lot with some Aguys@ from work and had gotten Ahigh.@  Appellant confronted Melanie and told her she
did not spend enough time with the baby. 
They began to argue and Melanie finally told Appellant that she and the
baby did not need him and he needed to leave the apartment.  When Melanie began to strike Appellant=s face, he lost his temper and began
choking her with both hands.  After she
fell to the floor, he stomped the back of her neck with his foot, striking a
single blow.  Appellant determined that
Melanie still had a pulse and was breathing before he fled from the apartment
with the baby.

Appellant
called one of his friends, Ricky Gutierrez, the following morning and told him
that he thought he had killed Melanie. 
Gutierrez eventually convinced Appellant to turn himself in to the
police.  Melanie was later found dead in
her apartment.  Although Appellant
claimed that he only stomped on her once, the forensic pathologist who
performed the autopsy determined that she suffered multiple injuries to her
head, face, and upper back as a result of blunt force trauma.  Further, she had linear abrasions on her face
that appeared consistent with the pattern on the sole of Appellant=s boots.  








The
jury rejected Appellant=s
claim of sudden passion and assessed his punishment at
life imprisonment.  A few days after
trial concluded, Appellant=s
trial attorney, the Honorable Leonard J. Bruce, filed an unsworn
motion to withdraw alleging that new counsel should be appointed Ashould the defendant elect to file an
appeal or motion for new trial.@  He further alleged that his continued
representation of Appellant would result in the deprivation of  Appellant=s
right to allege and effectively argue ineffective assistance of counsel.  The trial court denied the motion with a
written order the following day.  Bruce
timely filed a written notice of appeal on Appellant=s
behalf.

DENIAL OF MOTION TO WITHDRAW

In
his first point of error, Appellant contends that the trial court abused its
discretion in denying trial counsel=s
motion to withdraw without a hearing.  He
generally argues that an appellant is denied the effective assistance of
counsel on appeal where the same attorney represents the appellant at trial and
then on appeal.  The trial court has
discretion to determine whether counsel should be allowed to withdraw from a
case.  King v. State,
29 S.W.3d 556, 566 (Tex.Crim.App. 2000).  The right to counsel may not be manipulated
so as to obstruct the judicial process or interfere with the administration of
justice.  Id.








Here
there is no evidence that counsel filed the motion to withdraw for the purpose
of manipulating or obstructing the judicial process.  However, the motion to withdraw was not
supported by any evidence showing that Appellant wished to complain about
counsel=s trial
performance.  Instead, it was contingent
on Appellant=s desire
to appeal and based on a general assertion that the same attorney should not
represent the defendant at trial and on appeal. 
In the absence of an allegation or some evidence indicating a need for
an evidentiary hearing, the trial court had no obligation to conduct one.  Further, Appellant cites no authority in
support of his contention that a defendant is automatically denied the effective
assistance of counsel on appeal where the same attorney represents the
defendant both at trial and on appeal. 
We decline to create such an arbitrary and unworkable rule.  

In
passing on the motion to withdraw, the trial court was aware of the strong
presumption that counsel=s
representation of Appellant falls within the wide range of reasonable,
professional assistance and that any decisions made are the result sound trial
strategy.  See Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App.
1994).  Further, the trial judge had the
opportunity to observe first-hand counsel=s
performance.  We will not speculate that
there may be some evidence yet to be developed that will support a claim of
ineffective assistance.  In the absence
of any allegations or evidence supporting a claim of ineffective assistance of
counsel, we are unable to conclude that the trial court abused its discretion
in denying the motion to withdraw.  Point of Error No. One is overruled.

ADMISSION OF PHOTOGRAPHS








In Point of Error No. Two, Appellant argues that the trial
court abused its discretion in admitting seven photographs of the deceased
(State=s Exhibits
2, 6, 8, 11, 12, 18, and 20) which were utilized by the forensic pathologist,
Dr. Rodney Tucay, during his testimony.  He primarily argues that the photographs are
inadmissible under Rule 403 of the Texas Rules of Evidence because their
probative value is substantially outweighed by the danger of unfair
prejudice.  However, he additionally
contends that the photographs are irrelevant since the issue of his guilt and
the nature of the deceased=s
injuries were not contested at trial or were established by other
evidence.  Although Appellant made what
can be construed as arguments related to the relevancy of the photographs, he
never argued at trial that any of these photographs were inadmissible because
the issue of his guilt and the nature of the witnesses= injuries were not contested issues.[1]  Because this particular argument does not
comport with his trial objections, we will not address it.  See Santellan v.
State, 939 S.W.2d 155, 171 (Tex.Crim.App.
1997).

Rules 401 and 403








The
admission of photographs is within the discretion of the trial court.  Long v. State, 823
S.W.2d 259, 270 (Tex.Crim.App. 1991); Bradley v.
State, 960 S.W.2d 791, 803 (Tex.App.‑-El
Paso 1997, pet. ref=d).  A photograph will usually be admissible so
long as a verbal description of what it depicts is also admissible.  Allridge v. State, 850 S.W.2d 471, 494 (Tex.Crim.App.
1991).  Rule 403[2]
requires a photograph to possess some probative value and that its probative
value not be substantially outweighed by its inflammatory nature.  Santellan,
939 S.W.2d at 172; see Bradley, 960 S.W.2d at 803.  In making this determination, we consider
factors including:  the number of
exhibits offered, their gruesomeness, their detail,
their size, whether they are black and white or color, whether they are
close-up shots, whether the body is naked or clothed, the availability of other
means of proof, and other circumstances unique to the individual case.  Id. 
Photographs showing a victim=s
wounds are admissible when offered to clarify and support observations and
conclusions about the victim=s
injuries and to reveal the manner of death, and not solely to inflame the minds
of jurors. Madden v. State, 799 S.W.2d 683, 697 (Tex.Crim.App.
1990); Bradley, 960 S.W.2d at 803.

The
State offered a total of eighteen photographs from the autopsy.  Each of the seven challenged exhibits are color 8@
x 10@
photographs of the deceased taken prior to the autopsy.  State=s
Exhibit 2 is a photograph taken of the deceased=s
head and chest.  Dr. Tucay
utilized the photograph to show the injuries he found on the body which he
concluded were consistent with strangulation and blunt force trauma.  State=s
Exhibit 6 is a close-up view of the injuries to the left side of the victim=s head. 
It is from a different angle than State=s
Exhibit 2 and it depicts certain pattern abrasions and petechial
hemorrhages on the eyelids which indicated that the deceased had suffered
asphyxiation.  State=s Exhibit 8 is a photograph of the
victim=s back
and, as described by the Dr. Tucay, it depicts
multiple contusions on both sides of the deceased=s
upper back.  The photograph also showed lividity or pooling of the blood after death.  State=s
Exhibit 11 depicted the clothed body of the deceased as she appeared upon
arrival at the morgue.  State=s Exhibit 12 is a close-up view of the
face but from a different angle than State=s
Exhibit 11.  State=s
Exhibits 18 and 20 are two different views of the deceased=s left hand.  One photograph shows the top of the hand
while the other shows the palm.








These
exhibits possesses significant relevance in that all of them, except Exhibits
18 and 20, reveal the extensive injuries suffered by the victim in this vicious
attack, regardless of whether the photographs also depict lividity
and rigor.  Dr. Tucay
utilized the photographs in his testimony to illustrate the nature of the
injuries he found and to support his conclusions regarding the cause of
death.  Further, the photographs refuted
Appellant=s
assertion that he only stomped on the deceased a single time.  State=s
Exhibits 18 and 20 illustrated the absence of any offensive or defensive wounds
on the deceased=s left
hand.[3]  Therefore, the trial court did not abuse its
discretion in finding the evidence relevant.

The
photographs are not especially gruesome and the State did not attempt to offer
more photographs than were necessary for Dr. Tucay=s use in his testimony.  Appellant urges that it was unnecessary for
the State to offer any of these photographs since he had pled guilty and
admitted choking Cadena and stomping on her
neck.  However, the photographs assisted
the State in refuting significant aspects of Appellant=s
version of how the murder occurred.  This
is relevant because if the jury found that Appellant had not been truthful in
relating the details of the murder, it might also disbelieve his claim of
sudden passion.  The significant
probative value of these photographs is not substantially outweighed by the
danger of unfair prejudice nor is this a situation in which the State presented
unnecessary cumulative evidence. 
Accordingly, the trial court did not abuse its discretion in admitting
these exhibits over Appellant=s
objections.  Point of
Error No. Two is overruled. 
Having overruled both points of error, we affirm the judgment of the
trial court.

 

 

July 25, 2002

                                                                         

ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]  A Rule 403
objection, standing alone, does not preserve a relevancy complaint.  Although Appellant did not expressly object
to the relevance of the photographs, we are able to extract such a complaint
from his Rule 403 objection.  The better
practice is to make a separate and specific relevance objection or risk waiving
the error.  See
e.g., Phipps v. State, 904 S.W.2d 955, 957 (Tex.App.‑-Beaumont
1995, no pet.)(defendant waived for appellate review issue of relevancy
of photographs of victim used at trial where defendant=s objection at trial merely complained of inflammatory
nature of photographs and not of their relevancy); see also Smith v. State,
959 S.W.2d 1, 14 (Tex.App.‑-Waco 1997, pet. ref=d)(objection, by university official accused of
soliciting benefit from prospective public contractor, that university
solicitation policy was Asignificantly different from the state law, and thus,
we object under Rule 403 under confusion of issues@ did not suffice to call court=s attention to policy=s
alleged lack of relevance, and thus waived objection that policy was
irrelevant).   





[2]  Rule 403
provides:  AAlthough
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@  Tex.R.Evid. 403.





[3]  Appellant does
not raise a complaint on appeal regarding the admissibility of the photographs
of the other hand.