

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 30, 2008

The Honorable Vicki Truitt
Chair, Committee on Pensions and Investments
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0633

Re: Whether an educational institution violates article 6228a-5, section 9(a)(4)–(7) of the Texas Revised Civil Statutes if the institution contracts with a third-party administrator that is owned by or otherwise affiliated with a company that sells qualified 403(b) investment products to the institution's employees (RQ-0653-GA)

Dear Representative Truitt:

Article 6228a-5, sections 4–13 of the Revised Civil Statutes provides the means by which an educational institution's employees may participate in investment plans that meet the requirements of section 403(b) of the Federal Internal Revenue Code (a "403(b) plan"). *See generally* 26 U.S.C.A. § 403(b) (West Supp. 2007); TEX. REV. CIV. STAT. ANN. art. 6228a-5, §§ 4–13 (Vernon Supp. 2007). You tell us that "Texas educational institutions offering 403(b) plans often obtain the services of third party administrators (TPAs) to assist in" managing their 403(b) plans.[1] You ask two questions about an educational institution's use of a third-party administrator that is affiliated with a company offering qualified 403(b) investment products for sale to employees of the educational institution (an "affiliated third-party administrator"):

(1) Does an educational institution violate Section 9(a)(4) through (7), Article 6228a-5 . . . if the institution contracts with a [third-party administrator] that is owned by or otherwise affiliated with a company that sells qualified investment products to the institution's employees?

(2) Specifically, does an educational institution violate Section 9(a)(6) . . . if the institution contracts with a [third-party administrator] described by question (1) and the [third-party

---

[1]Letter from Honorable Vicki Truitt, Chair, Committee on Pensions and Investments, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Nov. 29, 2007) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

administrator] provides its services for free, for a nominal fee, or at a reduced rate?

*See* Request Letter, *supra* note 1, at 3.  Your questions raise many issues of fact, which cannot be resolved in an opinion.  *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").  We can, however, provide some guidance as to the interpretation of the statute at issue.  We begin by examining article 6228a-5 in light of the facts you have provided.

## I.     Statutory and Factual Background

Under article 6228a-5, section 5(a), an educational institution "may enter into a salary reduction agreement with an employee of the institution" under which the educational institution agrees to reduce the employee's salary for the purpose of directly contributing to or purchasing certain qualified 403(b) investment products.  TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 5(a) (Vernon Supp. 2007); *see id.* § 4(2), (4), (7) (defining "educational institution," "employee," and "salary reduction agreement"); *see also id.* § 5(f) ("To the greatest degree possible, employers of employees who participate in the program offered under this section shall require that contributions to eligible qualified investments be made by automatic payroll deduction and deposited directly in the investment accounts.").  The employee is "entitled to designate any agent, broker, or company through which a qualified investment product may be purchased or contributions may be made," but may purchase only eligible qualified investment products (annuities or investments) that are registered with the Teacher Retirement System of Texas (the "Retirement System") in accordance with article 6228a-5, section 8A.  *Id.* § 5(e); *see id.* § 5(a); *see also id.* § 4(3), (5)–(6) (defining "eligible qualified investment," "qualified investment product," and "retirement system"); *id.* § 5(d) (requiring the Retirement System to "establish and maintain" on the Retirement System's Internet website "a list of companies that have certified under this section"); *id.* § 8A (setting out the procedure by which a company offering a qualified investment product to an educational institution's employees may register the product with the Retirement System).

You tell us that educational institutions offering 403(b) plans often "obtain" the services of third-party administrators to assist in the administration of their 403(b) plans.  Request Letter, *supra* note 1, at 1.  You indicate that, in serving an educational institution, a third-party administrator typically

- receives employees' salary reduction agreements, screens the agreements for compliance with applicable federal and state law, and approves the required employee payroll deductions; and

- receives the funds from the employees' payroll deductions and forwards those funds to the appropriate companies for deposit into the appropriate employees' 403(b) policies or accounts.

*See id.* (footnote omitted).  You also tell us that new federal regulations promulgated by the Internal Revenue Service place "greater responsibility" on employers "in administering their 403(b) plans"

and that educational institutions are therefore likely to rely increasingly on third-party administrators. *Id.* at 2.

You explain that an educational institution must provide its third-party administrator with access to certain personal and financial information of participating employees, such as

- the name and identifying number (i.e., social security number or employee identification number) of each employee who purchases a qualified investment product;

- records related to purchasing the investment product, including the employee's salary reduction agreement;

- information regarding the investment product purchased, including information about the company from which the employee purchased the investment product; and

- information regarding the amount of the purchase.

*Id.*

And you further state that third-party administrators may be affiliated with companies selling qualified 403(b) investment products:

> [Third-party administrators] are not always independent from the companies that sell qualified investment products. In some instances, a company that sells qualified investment products may form a subsidiary organization to offer [third-party administrator] services. In other instances, a company and a [third-party administrator] might both be owned by the same parent company. Frequently, in these situations, the affiliated [third-party administrator] offers services for fees reportedly ranging from $1,000 to $5,000 annually, fees that are well below the market rate charged by independent [third-party administrators] for the same services.

*Id.*

You are concerned that an educational institution's use of an affiliated third-party administrator may violate article 6228a-5, section 9(a)(4)–(7). *See id.* at 3. With respect to section 9(a)(6) in particular, you are concerned about the practice of an educational institution accepting affiliated-third-party-administrator services for free or at a nominal or reduced rate. The provisions about which you ask limit the actions of an educational institution:

(a)   An educational institution may not:

. . .

(4) grant exclusive access to an employee by discriminating against or imposing barriers to any agent, broker, or company that provides qualified investment products under this Act;

(5) grant exclusive access to information about an employee's financial information, including information about an employee's qualified investment products, to a company or agent offering qualified investment products unless the employee consents in writing to the access;

(6) accept any benefit from a company or from an agent or affiliate of a company that offers qualified investment products; or

(7) use public funds to recommend a qualified investment product offered by a company or an agent of a company that offers a qualified investment product.

TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(4)–(7) (Vernon Supp. 2007).

On its face, section 9 applies to the actions of an "educational institution," which article 6228a-5 defines to mean a school district or an open-enrollment charter school. *See id.* §§ 4(2), 9. You do not ask whether the term "educational institution" in section 9 encompasses a third-party administrator as the educational institution's delegatee or agent, and therefore we do not consider the question. *See* Request Letter, *supra* note 1, at 3.[2] Moreover, whether an entity serves as a principal's agent depends upon the resolution of fact issues—specifically whether the principal "manifests assent to" the entity that the entity will "act on the principal's behalf and subject to the principal's control, and the [entity] manifests assent or otherwise consents so to act"—that cannot be resolved in an opinion. RESTATEMENT OF THE LAW OF AGENCY § 1.01 (3d ed. 2006); *see* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process."); *see also* RESTATEMENT OF THE LAW OF AGENCY § 1.01 cmt. c (3d ed. 2006) (describing the elements of agency, which include the principal's right to control the agent). We turn now to the questions you ask, considering each subsection in turn. In this way, we combine our answers to your questions.

---

[2]*See also* Letter from Steve Bresnen, Steve Bresnen & Assocs., on behalf of 1st American Pension Services, Inc., to Honorable Greg Abbott, Attorney General of Texas, at 8 (Jan. 28, 2008) (suggesting that a third-party administrator is an agent of the educational institution "under the principle of *respondeat superior*"); Letter from Susan Jennings, General Counsel, Life Insurance Co. of the Southwest, to Honorable Greg Abbott, Attorney General of Texas, at 5 (Feb. 7, 2008) ("As the [third-party administrator] would be the school's <u>agent</u> (since the school is the principal who retained the [third-party administrator] to act on its behalf regarding the 403(b) plan)," a school could be liable for a third-party administrator's violation of section 9(a)(7)) (both letters on file with the Opinion Committee).

## II.    Analysis

### A.    Section 9(a)(4)

Section 9(a)(4) prohibits an educational institution from granting "exclusive access to an employee by discriminating against or imposing barriers to any agent, broker, or company that provides" qualified 403(b) investment products to the educational institution's employees. TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(4) (Vernon Supp. 2007). In our opinion, whether an educational institution grants "exclusive access to an employee by discriminating against or imposing barriers to" a qualified-investment-product provider by contracting with an affiliated third-party administrator is a question that requires the resolution of numerous fact questions. One must decide, for example, whether the educational institution's grant of exclusive access to a third-party administrator discriminates against or imposes barriers to an agent, a broker, or a company that sells qualified investment products. This office does not resolve fact questions. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

### B.    Section 9(a)(5)

Section 9(a)(5) prohibits an educational institution from granting "exclusive access to information about an employee's financial information . . . to a company or agent offering qualified investment products unless the employee consents in writing to the access." TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(5) (Vernon Supp. 2007). If the term "company" encompasses only that portion of the entity selling qualified investment products, then the educational institution may provide the third-party administrator with exclusive access to employees' financial information without violating section 9(a)(5), but if the term "company" encompasses subsidiaries of the qualified-investment-product provider or entities owned by the same parent company, then providing exclusive access to an affiliated third-party administrator violates section 9(a)(5). We consequently consider the meaning of the term "company" for purposes of section 9(a)(5).

Article 6228a-5 does not define the term "company," but section 9(a)(6) distinguishes between a company and an affiliate of the company: "a *company or* . . . an agent or *affiliate* of a company that offers qualified investment products." *Id.* § 9(a)(6). While the term "affiliate" is not defined in article 6228a-5 and has not been defined by a court specifically in the context of article 6228a-5, the term ordinarily refers to "[a] corporation that is related to another corporation by shareholdings or other means of control" or "a 'company effectively controlled by another or associated with others under common ownership or control.'" *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (quoting BLACK'S LAW DICTIONARY 59 (7th ed. 1999); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (1971)); *see also* TEX. GOV'T CODE ANN. §§ 312.001–.002(a) (Vernon 2005) (directing that, with respect to the construction of "all civil statutes," "words shall be given their ordinary meaning"). Consequently, article 6228a-5, section 9(a)(6) indicates that the term "company" does not encompass affiliates of the company, i.e., companies with the same parent company or a company's subsidiary. And a term should be defined consistently throughout a statute. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (stating that a court should not give one provision in a legislative

enactment a meaning out of harmony or inconsistent with other provisions). As a result, we construe the term "company" throughout section 9 not to include affiliates.[3]

Construing the term "company" in this way is consistent with the term's definition in rules adopted by the Retirement System. The Retirement System has express statutory authority to "adopt rules" for use in administering certain portions of article 6228a-5, not including section 9. *See* TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 6(c) (Vernon Supp. 2007) (authorizing the Retirement System to "adopt rules only to administer [Section 6] and Sections 5, 7, 8, 8A, 11, 12, and 13 of this Act"); *see also id.* art. 6228a-5, § 4(6) (defining "retirement system"). As the Retirement System defines the term, a company is

> [a]n entity that offers and issues a qualified investment product and that has primary liability to the purchaser for performance of the obligations described in the product, contract, annuity contract or annuity certificate, or policy. Generally, "company" does not include . . . third party administrators, . . . unless such entities have primary liability for performance of the obligations in the product or contract.

34 TEX. ADMIN. CODE § 53.1(5) (2008) (Retirement System, Definitions). While the Retirement System is not authorized to define the term for purposes of section 9, a term ideally should be construed consistently throughout a statute. *See Helena Chem. Co.*, 47 S.W.3d at 493 (stating that a court should not give one provision in a legislative enactment a meaning out of harmony or inconsistent with other provisions).

We therefore conclude that, for purposes of article 6228a-5, the term "company" encompasses only that portion of an entity selling qualified investment products; it does not encompass a subsidiary company or a company owned by the same parent corporation. Consequently, an educational institution may provide an affiliated third-party administrator with exclusive access to employees' financial information without violating section 9(a)(5). Nevertheless, whether providing such exclusive access violates section 9(a)(5) in particular circumstances is a

---

[3]Other statutes define the term "company," but we are reluctant to apply any of these definitions to article 6228a-5 without considering the purposes for which the Legislature adopted each of the acts that define the term. *See, e.g.,* TEX. REV. CIV. STAT. ANN. art. 581-4.B. (Vernon Supp. 2007) (defining the term "company" to "include a corporation, person, joint stock company, partnership, limited partnership, association, company, firm, syndicate, trust, incorporated or unincorporated"); TEX. FIN. CODE ANN. § 61.002(6) (Vernon Supp. 2007) (defining "company" to mean "a corporation, partnership, trust, joint-stock company, association, unincorporated organization, or other similar entity or a combination of any of those entities acting together"); TEX. GOV'T CODE ANN. § 806.001(3) (Vernon Supp. 2007) (defining "company" to mean "a sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, limited liability company, or other entity or business association whose securities are publicly traded, including a wholly owned subsidiary, majority-owned subsidiary, parent company, or affiliate of those entities or business associations, that exists to make a profit"). Additionally, to the extent other statutory definitions would include affiliates, they would be inconsistent with section 9(a)(6), which makes clear that for purposes of article 6228a-5, section 9, the term "company" does not include an affiliate.

decision for a court.[4] *Cf.* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

## C.   Section 9(a)(6)

The issue with respect to section 9(a)(6), which prohibits an educational institution from accepting "any benefit from . . . an . . . affiliate of a company that offers qualified investment products," is whether an educational institution accepts a benefit if an affiliated third-party administrator manages the 403(b) plan for free or for a nominal or reduced fee. TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(6) (Vernon Supp. 2007).

Article 6228a-5 does not define the term "benefit." *See generally id.* art. 6228a-5. But statutes that attempt to prevent corrupt influences on public servants define the term "benefit" to mean "anything reasonably regarded as pecuniary gain or pecuniary advantage." TEX. PENAL CODE ANN. § 36.01(3) (Vernon 2003); TEX. TRANSP. CODE ANN. § 366.2521(a) (Vernon Supp. 2007); *see also* TEX. PENAL CODE ANN. § 1.07(a)(7) (Vernon Supp. 2007) ("'Benefit' means anything reasonably regarded as economic gain or advantage . . . ."). The Waco court of appeals has construed the term "benefit" in the context of one of these statutes to include "anything to which a price can be assigned," excepting goods or services of minimal value. *Smith v. State*, 959 S.W.2d 1, 20–21 (Tex. App.—Waco 1997, pet. ref'd). The Texas Ethics Commission, the entity charged with administering the Penal Code provisions prohibiting a public servant's acceptance of a benefit, has determined that the waiver of a private organization's membership fees constitutes a benefit. *See* Op. Tex. Ethics Comm'n No. 268 (1995) at 1. Similarly, the Ethics Commission determined that, but for the fact that the Legislature has specifically excepted from the term "benefit" the use of a governmental entity's property or facilities, unlimited free parking in city-owned or city-leased spaces would constitute a benefit. *See* Op. Tex. Ethics Comm'n No. 186 (1994) at 1; *see also* Op. Tex. Ethics Comm'n No. 282 (1995) at 1 ("A discount on child care costs is a benefit.").[5]

Because article 6228a-5, section 9(6) appears on its face to discourage corrupt influences on educational institutions, the statutory definition, judicial definition, and the Ethics Commission's interpretations are instructive. In addition, this definition of the term "benefit" is consistent with the

---

[4]Section 9(a)(5) prohibits the granting of exclusive access to an employee's financial information "unless the employee consents in writing to the access." TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(5) (Vernon Supp. 2007). Accordingly, an educational institution that obtains the services of an affiliated third-party administrator may wish to protect itself by obtaining employees' consent in the event that providing information to the third-party administrator violates section 9(a)(5).

[5]Coincidentally, the Texas Commissioner of Insurance recently has determined that the provision of administrative services by a third-party administrator "on a no-additional-fee basis" may "constitute an . . . inducement that is not specified in the" underlying insurance policy in violation of sections 541.056(a) and 543.003(1)(A), (C) of the Insurance Code. Commissioner's Bulletin #B-0004-08 (Jan. 31, 2008), *available at* http://www.tdi.state.tx.us/ bulletins/index.html (last visited May 29, 2008). The Department of Insurance thus "strongly cautions" an insurance company, insurance agent or agency against directly or indirectly providing administrative services "at no additional fee." *Id.*

term's ordinary meaning. *See* THE NEW OXFORD AMERICAN DICTIONARY 154 (2001) (defining "benefit" as "an advantage or profit gained from something"); *see also* TEX. GOV'T CODE ANN. §§ 312.001–.002(a) (Vernon 2005) (directing that, with respect to the construction of "all civil statutes," "words shall be given their ordinary meaning"). We thus construe the term "benefit" in article 6228a-5, section 9(a)(6) to encompass "anything reasonably regarded as pecuniary gain or pecuniary advantage," excepting perhaps goods or services of minimal value.[6] TEX. PENAL CODE ANN. § 36.01(3) (Vernon 2003); TEX. TRANSP. CODE ANN. § 366.2521(a) (Vernon Supp. 2007); *see also* TEX. PENAL CODE ANN. § 1.07(a)(7) (Vernon Supp. 2007) ("'Benefit' means anything reasonably regarded as economic gain or advantage."); *Smith*, 959 S.W.2d at 20–21 ("a 'benefit' could . . . be anything to which a price can be assigned"). Based on the definition of the term "benefit" and the Ethics Commission's determinations, a court likely would find that the receipt of third-party-administrator services for free or for a reduced fee constitutes a benefit.

Section 9(a)(6) suggests, however, that the benefit must flow to the educational institution. *See* TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(6) (Vernon Supp. 2007) ("An educational institution may not accept any benefit . . . ."). Depending upon how the educational institution and third-party administrator structure their contractual arrangement, it may be the educational institution's employees, not the educational institution itself, that benefit. Determining the beneficiary in any particular arrangement is a question of fact that cannot be resolved in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

### D.  Section 9(a)(7)

We finally consider section 9(a)(7), which prohibits an educational institution from using "public funds to recommend a qualified investment product offered by a company or an agent of a company that offers a qualified investment product." TEX. REV. CIV. STAT. ANN. art. 6228a-5, § 9(a)(7) (Vernon Supp. 2007). Whether the use of an affiliated third-party administrator in particular circumstances constitutes using public funds to recommend qualified 403(b) investment products sold by a particular company is a question of fact that cannot be resolved in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

---

[6]You do not suggest that a third-party administrator's waiver or reduction of fees is of "minimal value." *See* Request Letter, *supra* note 1, at 1–3. Therefore, we need not consider here whether article 6228a-5, section 9(a)(6) excepts benefits of minimal value.

## S U M M A R Y

Whether an educational institution violates article 6228a-5, section 9(a)(4), (6)–(7) of the Revised Civil Statutes by contracting with a third-party administrator that is affiliated with a company that sells qualified 403(b) investment products to the educational institution's employees is a question requiring the resolution of facts. An educational institution may provide a third-party administrator that is affiliated with a company offering qualified 403(b) investment products to employees of the educational institution with exclusive access to employees' financial information without violating section 9(a)(5), although a court may find a violation in particular circumstances.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee