

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00284-CR

_____

DARRELL KRAMER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F20-1113-362

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Darrell Kramer was convicted of murdering his ex-wife Diane Kramer and sentenced to ninety-nine years in prison. *See* Tex. Penal Code Ann. §§ 12.32(a), 19.02(b)–(c). On appeal, Kramer argues in two points that the evidence is insufficient to support his conviction. We will affirm.

## I. BACKGROUND

On February 17, 2020, volunteers picking up litter near Diane's home in Denton, Texas, discovered some clothing items with dried blood stains on them. Wrapped inside the clothing was a hammer. The volunteers notified the police, who collected, photographed, and stored the items.[1]

On March 13, 2020, Stevie and Richard Ealey, Diane's daughter and son-in-law, went to Diane's house to perform a welfare check. Stevie and Richard received no response to their repeated knocks on the front door, but they could hear Diane's dogs barking inside the house. After noticing that the window on the back door was broken, Richard climbed the back fence and entered the house through that door. Once inside, he found the house littered with dog feces and many empty alcohol bottles. He yelled Diane's name but received no response. After making his way to the bedroom, he found Diane's body in an advanced state of decomposition. The police

---

[1]Later, through forensic analysis, Kramer's and Diane's DNA was found on the hammer.

were called, and it was determined that Diane had died of blunt force trauma to the head.

A murder investigation ensued, and Kramer emerged as a primary suspect. Although Kramer and Diane were divorced, they maintained an on-again, off-again relationship. Their relationship was tumultuous, and those close to Diane had observed Kramer engaging in violent behavior towards her. Although Kramer was living in Diane's home at the time of her death, he never reported her death to police, and shortly before her body was found, he had been using her debit card frequently.

Ultimately, Kramer was charged with murdering Diane. A jury convicted Kramer and assessed his punishment at ninety-nine years in prison. The trial court sentenced him accordingly. This appeal followed.

## II. DISCUSSION

### A. Kramer Is Not Entitled to a Factual-Sufficiency Review of the Evidence

In his first point, Kramer argues that the evidence was factually insufficient to support his conviction and sentence.[2] However, current binding precedent from the Court of Criminal Appeals dictates that appellate courts are to employ a legal-

---

[2]In his first point, Kramer contends "that the evidence was factually insufficient to convict him *to the maximum sentence*." [Emphasis added.] To the extent that Kramer intends to argue that his sentence is grossly disproportionate to the offense for which he was convicted and thus violates the Eighth Amendment, *see Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010), he has forfeited any such argument by failing to object when the trial court sentenced him or to file a motion for new trial raising such a disproportionality argument, *see Russell v. State*, 341 S.W.3d 526, 527–28 (Tex. App.—Fort Worth 2011, no pet.); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd).

sufficiency review of the evidence in criminal cases, not a factual-sufficiency review. *See Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see also Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) ("[W]e have abolished factual-sufficiency review."). Accordingly, we reject Kramer's factual-sufficiency challenge and overrule his first point.

## B. The Evidence Is Legally Sufficient to Support Kramer's Conviction

In his second point, Kramer, emphasizing the fact that at least one witness was not completely positive of the date on which she last spoke to Diane, argues that the evidence was legally insufficient to support his conviction because it "was based on inaccurate dates of when [Diane] was seen and heard of being alive." This argument is meritless.

### 1. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

4

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton*, 569 S.W.3d at 608; *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging

5

instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## 2. Application

The indictment alleged that "on or about" February 16, 2020, "and anterior to the presentment of th[e] [i]ndictment," Kramer "intentionally or knowingly cause[d]" Diane's death by "striking [her] with a hammer or unknown object or by causing blunt force trauma." *See* Tex. Penal Code Ann. § 19.02(b)(1). Thus, a hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that Kramer (1) intentionally or knowingly caused Diane's death (2) by striking her with a hammer or unknown object or by causing blunt force trauma (3) on or about February 16, 2020. *See Hammack*, 622 S.W.3d at 914; *see also Curlee*, 620 S.W.3d at 778.

Kramer specifically argues that the State failed to prove the date on which the crime occurred; he does not complain about the sufficiency of the evidence to support any other element of the offense. According to Kramer, because certain witnesses were not completely certain of the last date on which they saw Diane alive or provided inconsistent dates of when they last saw her alive, no rational trier of fact could have found that the State proved that Kramer committed the crime on the date alleged in the indictment.

6

But the inability of witnesses to recall specific dates merely goes to the weight and credibility of their testimony—of which the jury, as factfinder, is the sole judge. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin*, 635 S.W.3d at 679. In our legal-sufficiency review, we may not re-evaluate the evidence's weight and credibility or substitute our judgment for the jury's. *Queeman*, 520 S.W.3d at 622. Moreover, we must presume that the jury resolved any inconsistencies in the witnesses' testimony to support its guilty verdict. *See Harrell*, 620 S.W.3d at 913–14; *McQuarters v. State*, No. 01-18-00213-CR, 2019 WL 2345414, at *2 (Tex. App.—Houston [1st Dist.] June 4, 2019, no pet.) (mem. op., not designated for publication). Thus, the witnesses' difficulty recalling specific dates does not support Kramer's legal-insufficiency argument.

Moreover, the State was not required to prove a specific date and time of death, nor was it required to prove that the murder was committed exactly on February 16, 2020. When—as here—an indictment alleges that the offense occurred "on or about" a certain date, the State is only required to prove that the defendant committed the offense "at some time prior to the filing of the indictment and within the limitations period." *Smith v. State*, 959 S.W.2d 1, 26 (Tex. App.—Waco 1997, pet. ref'd); *accord DeMoss v. State*, 12 S.W.3d 553, 560 (Tex. App.—San Antonio 1999, pet. ref'd).

Viewed in the light most favorable to the verdict, the record contains ample evidence to support the jury's finding that the State proved the indictment's date allegation beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

The record shows that Diane was last seen on February 5, 2020, on surveillance video from a 7-Eleven convenience store and was last heard from on February 6, 2020, during a phone call with her daughter Stevie.[3] The hammer—the apparent murder weapon—with traces of both Kramer's and Diane's DNA was found on February 17, 2020. Kramer's friend Nicholas Waldman testified that he found Diane dead when he went to her house searching for Kramer after being released from jail on March 3, 2020. Stevie and Richard discovered Diane's body in an advanced state of decomposition on March 13, 2020. Thus, the evidence indicates that Diane likely died in mid-February 2020—and definitely died no later than March 2020—which is well before the filing of the indictment in June 2020. Accordingly, a rational factfinder could have found beyond a reasonable doubt that Kramer murdered Diane before the indictment was filed and within the limitations period. *See Smith*, 959 S.W.2d at 26; *DeMoss*, 12 S.W.3d at 560; *see also* Tex. Code Crim. Proc. Ann. art. 12.01(1)(A) (providing that there is no limitations period for murder).

Further, viewed in the light most favorable to the verdict, the evidence is sufficient to support the jury's finding that Kramer murdered Diane by striking her

---

[3]The record reflects that Stevie received text messages from Diane's phone on February 12 and 17, 2020. But Stevie testified that these texts differed in style from Diane's usual messages and that in hindsight she did not believe that they were actually sent by Diane.

with a hammer.[4] *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. For example, the record reflects that

- The medical examiner who performed the autopsy on Diane testified that her death was caused by "[b]lunt force injuries of the head due to assault by another person";

- The forensic anthropologist who examined Diane's cranium testified that the damage to her skull was consistent with its having been hit with a hammer;

- A hammer containing both Kramer's and Diane's DNA was found wrapped in blood-stained clothing near Diane's house on February 17, 2020;

- Despite living with Diane at the time of her death, Kramer never reported her death to the police;

- Shortly before Diane's body was discovered in an advanced state of decomposition, Kramer had been frequently using Diane's debit card;

- Those close to Diane had observed Kramer engaging in violent behavior towards her throughout the course of their relationship;

- Kramer admitted to his friend Waldman that he had "beat[en] [Diane's] brains in with a hammer"; and

- While in custody awaiting trial, Kramer told another inmate that he had "lost control" and had "beat[en] [Diane] in the head" after she would not give him her credit card to buy wine and cigarettes.

---

[4]Although Kramer's legal-insufficiency argument focused solely on the date element, we address the sufficiency of the evidence to support the offense's other elements in the interest of ensuring completeness. *See Pabon v. State*, No. 08-18-00152-CR, 2020 WL 4381650, at *5 (Tex. App.—El Paso July 31, 2020, no pet.) (not designated for publication) (addressing issue "in the interest of ensuring completeness"); *Jones v. State*, No. C14-92-01182-CR, 1993 WL 153660, at *3 (Tex. App.—Houston [14th Dist.] May 13, 1993, pet. ref'd) (not designated for publication) (addressing argument "in the interest of completeness and caution").

This evidence is sufficient to show that Kramer intentionally or knowingly caused Diane's death by striking her with a hammer.

Because a rational factfinder, having considered the evidence presented at trial, could have found beyond a reasonable doubt that—at some point before the indictment was filed and within the limitations period—Kramer murdered Diane by striking her with a hammer, we overrule Kramer's second point. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622; *see also Smith*, 959 S.W.2d at 26; *DeMoss*, 12 S.W.3d at 560.

### III. CONCLUSION

Having overruled both of Kramer's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 28, 2023